525 So.2d 1279 (1987)
Howard Monteville NEAL
v.
STATE of Mississippi.
No. DP-36.
Supreme Court of Mississippi.
September 23, 1987.
As Modified on Denial of Rehearing June 3, 1988.
Charles R. Bliss, Atlanta, Ga., James L. Sultan, Rankin & Sultan, Boston, Mass., Kenneth J. Rose, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
DAN M. LEE, Justice, for the Court:

I.
We have before us this day the familiar application for post-conviction relief by one convicted of capital murder and sentenced to death. Prominent among the claims asserted *1280 are ineffective assistance of trial counsel and a claim that Petitioner was denied the right to take the witness stand in his own defense. Petitioner also presents a number of already-rejected constitutional challenges to his conviction and sentence  exhaustion of state remedies it is called,[1] although exhaustion of state judges would be a more accurate label.
We have reviewed carefully petitioner's application, his supporting affidavits, and the prior course of proceedings in this case. With respect to the claim that he was denied his right of allocution, petitioner has presented a substantial showing of the denial of a state or federal right. We remand for an evidentiary hearing. All other claims have been previously decided and are precluded from relitigation here, except the claim for ineffective assistance of counsel which we deny for want of a substantial showing of merit.

II.
Prior proceedings in the case of Howard Monteville Neal reflect that on January 24, 1981, Amanda Joy Neal was murdered in Lawrence County, Mississippi. On February 4, 1982, following a change of venue to Lamar County, Neal was found guilty by a Circuit Court jury of the capital murder of Amanda Joy. On that same day the jury imposed a sentence of death.
Neal appealed, attacking both his conviction and sentence. On May 23, 1984, this Court affirmed with a written opinion. Neal v. State, 451 So.2d 743 (Miss. 1984). On July 11, 1984, Neal's petition for rehearing was denied. Thereafter, Neal applied to the Supreme Court of the United States for a writ of certiorari, which application was denied on December 10, 1984. Neal v. Mississippi, 469 U.S. 1098, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984).
The matter is now before the Court upon Neal's application for relief under the Mississippi Uniform Post-Conviction Collateral Relief Act. Miss. Code Ann. §§ 99-39-1 et seq. (Supp. 1986). The Attorney General, of course, denies facial merit to Neal's application.
Our procedural posture is analogous to that when a defendant in a civil action moves to dismiss for failure to state a claim. See Rule 12(b)(6), Miss.R.Civ.P.; Stanton & Associates, Inc. v. Bryant Construction Company, Inc., 464 So.2d 499, 504-06 (Miss. 1985). Functionally, Section 99-39-9 is substituted for the pleadings requirements of Rule 8(a) and (e), Miss.R. Civ.P. In relevant part, Section 99-39-9 requires that an application for post-conviction relief contain
(c) A concise statement of the claims or grounds upon which the motion is based.
(d) A separate statement of the specific facts which are within the personal knowledge of the prisoner and which shall be sworn to by the prisoner.
(e) A specific statement of the facts which are not within the prisoner's personal knowledge. The motion shall state how or by whom said facts will be proven. Affidavits of the witnesses who will testify and copies of documents or records that will be offered shall be attached to the motion. The affidavits of other persons and the copies of documents and records may be excused upon a showing, which shall be specifically detailed in the motion, of good cause why they cannot be obtained. This showing shall state what the prisoner has done to attempt to obtain the affidavits, records and documents, the production of which he requests the court to excuse.
Notions of notice pleading have no place in post-conviction applications, the very name of which implies that there has been a final judgment of conviction. Respect for the integrity of the judicial process mandates that we require of such applicants a far more substantial and detailed threshold showing, far in excess of that we deem necessary in the case of a plaintiff in a civil action or, for that matter, in the case of the prosecution in a criminal indictment. In this context we understand Section 99-39-9 suggest a regime of sworn, fact pleadings, based upon personal knowledge. The *1281 Court upon examination of the application has the authority to dismiss it outright,
if it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief. .. . Miss. Code Ann. §§ 99-39-11(2).
On the other hand, if the application meets these pleading requirements and presents a claim procedurally alive "substantial[ly] showing denial of a state or federal right," the petitioner is entitled to an in court opportunity to prove his claims.[2] Miss. Code Ann. § 99-39-27(5) (Supp. 1986). Against this backdrop, we consider the allegations of Neal's application.

III.

A.
Neal's primary charge in the present proceeding is that he was denied effective assistance of counsel at his trial. This is a claim which is not procedurally barred. Miss. Code Ann. § 99-39-27(5) (Supp. 1986); Perkins v. State, 487 So.2d 791, 792-93 (Miss. 1986); Leatherwood v. State, 473 So.2d 964 (Miss. 1985); Read v. State, 430 So.2d 832, 836-42 (Miss. 1983).
An ineffective assistance claim by its very nature refers to the totality of counsel's pre-trial and trial performance. Neal so complains here of his court-appointed attorneys and points to some three specifics. First, he urges that his attorneys failed to conduct an adequate investigation prior to both the guilt phase and sentencing phase of his trial thereby denying him the opportunity to present an adequate defense. Second, he urges that one of his attorneys, Joe Dale Walker, had a conflict of interest in that he had represented one of Neal's alleged murder victims, Bobby Neal, less than two months before the latter was killed. Third, Neal alleges that his attorneys refused to permit him to take the stand in his own defense at his trial.
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) furnishes the legal standards by which we consider a claim of ineffective assistance of counsel, whether that claim be asserted under the Sixth and Fourteenth Amendments to the Constitution of the United States or under Article III, § 26 of the Mississippi Constitution of 1890. Washington mandates a two-fold inquiry: (1) whether counsel's performance was deficient, and, if so, (2) whether the deficient performance was prejudicial to the defendant in the sense that our confidence in the correctness of the outcome is undermined.
We have accepted the Washington standards on a number of occasions. See, e.g., Ferguson v. State, 507 So.2d 94, 95-97 (Miss. 1987); Waldrop v. State, 506 So.2d 273, 275-76 (Miss. 1987); Alexander v. State, 503 So.2d 235, 240-41 (Miss. 1987); King v. State, 503 So.2d 271, 273-76 (Miss. 1987); Leatherwood v. State, 473 So.2d 964 (Miss. 1985); Stringer v. State, 454 So.2d 468 (Miss. 1984). We emphasize that these standards are objective ones. They apply everywhere. As life and liberty are at stake, there is no place for a locality rule in right to counsel jurisprudence. Cf. Hall v. Hilbun, 466 So.2d 856 (Miss. 1985).
In the present posture of the matter, we are considering whether Neal's showing in his application for post-conviction relief and attached affidavits, coupled with the record made at his trial, render it sufficiently likely that he received ineffective assistance of counsel that we should order an evidentiary hearing regarding the matter. Put otherwise, on the papers and record before us, can we say with confidence that at any evidentiary hearing Neal will not be able to show that he has been denied effective assistance of counsel? If his application fails on either of the two prongs of Washington, we must terminate the proceedings here.

B.
Neal's charges of ineffective assistance of counsel are summarized in his post-conviction application as follows:
*1282 Neal charges that his court-appointed counsel failed to conduct an adequate investigation prior to trial and prior to the separate sentencing proceeding, thereby denying him the opportunity to present an adequate defense. Specifically, Neal alleges that his attorneys failed to interview members of the professional staff at the State School at Ellisville and the State Hospital at Whitfield, where he had been institutionalized for a large portion of his life; and that they failed to obtain his Oklahoma prison records or consult with any prison officials or medical professionals in the Oklahoma prison system regarding his mental capabilities and character.
With the exception of Neal's mother, counsel failed to interview any members of his family or any of his former employers or acquaintances. Despite evidence of Neal's mental retardation, counsel failed to obtain a neurological examination. Neal alleges that these investigative steps, had they been undertaken, would have provided important evidence which would have been highly probative, both with respect to determining the voluntariness of his confession and in presenting relevant mitigating circumstances to the jury during the separate sentencing proceeding. Neal charges that counsel's failure to conduct an adequate investigation constituted a denial of reasonably effective assistance of counsel.
Moreover, Neal alleges that co-counsel, Joe Dale Walker, represented him despite the fact that he had represented one of Howard's alleged murder victims, Bobby Neal, less than two months before the latter was killed. Neal argues that this situation was inherently conducive to divided loyalties on the part of counsel. Yet, neither Neal nor the Circuit Court was ever informed of this conflict of interest. Counsel's joint representation of victim and defendant adversely affected his performance, allegedly denying Neal effective assistance of counsel.
Neal alleges that he wanted to take the witness stand in his own defense. He charges that, although he expressed a desire to take the stand in his own defense during his trial, his attorneys refused to permit him to do so. This, Neal claims, denied him his constitutional right to testify in his own defense, and as well is a component of his claim of ineffective assistance of counsel. Had he been permitted to testify, Neal says he would have presented highly probative evidence concerning the lack of voluntariness of his alleged confession as well as facts concerning his background in mitigation of punishment.
Neal alleges that, but for counsel's deficient performance, as summarized above, there is a reasonable probability that the result of his trial would have been different. Specifically, he charges that it is reasonably likely that the Circuit Court would have concluded that his alleged confession was not based upon a free and voluntary waiver of his constitutional right against self-incrimination and that a properly-instructed jury would have found that the mitigating circumstances outweighed the statutory aggravating circumstances, resulting in the imposition of a sentence of life imprisonment, rather than death. Since the performance of trial counsel presents questions of fact, Neal charges that an evidentiary hearing is required to consider the merits of this claim. See Townsend v. Sain, 372 U.S. 293, 312-13, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963); Rummel v. Estelle, 590 F.2d 103, 104 (5th Cir.1979).
The problem with these charges is that they are substantially redundant or cumulative when compared with the evidence Neal offered at trial. Specifically, Neal now wants to present evidence of his lack of mental capacity, a fact said to go to the voluntariness of his confession and to be in mitigation of sentence. But he went into these same matters at trial. He called Dr. Dana Alexander, a clinical psychologist. He showed that he had been in Ellisville State School for retarded youths and that he was later in the retardation unit at Mississippi State Hospital at Whitfield. He further proved that his IQ was 54. See Neal v. State, 451 So.2d at 751-52 for further details of proof at trial. Because it is cumulative, what Neal alleges and purports to show now that counsel should have *1283 developed and proved simply does not amount to a substantial showing of denial of a state or federal right. Miss. Code Ann. § 99-39-27(5).
The same is true of Neal's allegations that competent counsel should have done a better job at sentencing phase of proving the details of Neal's troubled life. In addition to the testimony described above regarding his prior institutionalization, Neal called his mother as a witness who told his life story. Perhaps the details could have been fleshed out more fully through additional witnesses. This may often be said after an unsuccessful trial experience.
There is merit to Neal's demand for an evidentiary hearing on his claim of denial of his right of allocution. For present purposes, and applying the substantive and procedural standards set out above, we hold that Neal has not made a substantial showing of denial of his right to effective assistance of counsel. His prayer for an evidentiary hearing on this issue is denied.

IV.
Neal's claim that he was denied the right to testify in his own behalf is an element of his claim of ineffective assistance of counsel. That claim has independent standing as well by virtue of the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and Article 3, § 26 of the Mississippi Constitution of 1890. Here, it will be recalled, Neal says that, had his lawyers allowed him to testify, he would have presented highly probative evidence regarding the circumstances of his custodial interrogation as well as the abuse and deprivation he experienced as a child and as a young man, all in mitigation of punishment.
We addressed a similar question in Culberson v. State, 412 So.2d 1184 (Miss. 1982). In Culberson we held that an accused has a constitutional right to testify in his own behalf.
The denial of the right of an accused to testify is a violation of his constitutional right regardless of whether the denial stems from the refusal of the court to let a defendant testify as in Warren v. State, 174 Miss. 63, 164 So. 234 (1935), or whether the denial stems from the failure of the accused's counsel to permit him to testify.
412 So.2d at 1186.
The State's response does not mention our Culberson decision nor make any attempt to distinguish it. Indeed, we find no basis upon which the case could be distinguished. On this issue, and on the authority of Culberson, Howard Monteville Neal is entitled to an evidentiary hearing and an opportunity thereupon to establish his claim.

V.

A.
Neal argues that he was denied due process of law in that the Circuit Court refused to exclude the in-court identification testimony of Kenneth Hoffman. We considered that point on its merits on direct appeal and resolved it adversely to Neal. Neal v. State, 451 So.2d at 759-60. Under principles of collateral estoppel well established in our law, see Irving v. State, 498 So.2d 305, 308, 313 (Miss. 1986); Mann v. State, 490 So.2d 910, 911 (Miss. 1986); Evans v. State, 441 So.2d 520, 522-23 (Miss. 1983); Sanders v. State, 429 So.2d 245, 248-51 (Miss. 1983), Neal is precluded from relitigating the point here. Neal is not entitled to an evidentiary hearing on this claim nor to any relief.

B.
Neal next claims that the Circuit Court erred when it denied his motion for a directed verdict based upon insufficient evidence of kidnapping. Here Neal refers to the fact that he was charged with capital murder under Miss. Code Ann. § 97-3-19(2)(e) (Supp. 1983) and that the indictment more specifically charged that Neal had killed Amanda Joy Neal during the course of kidnapping her. It was necessarily incumbent upon the State in that posture of the matter to prove the kidnapping charge against Neal. We considered that point on its merits on direct appeal and resolved it adversely to Neal. Neal v. *1284 State, 451 So.2d at 757-68. Under principles of collateral estoppel well established in our law, Neal is precluded from relitigating the point here. Neal is not entitled to an evidentiary hearing on this claim nor to any relief.

C.
Neal next charges that the Circuit Court erred in overruling his motion to exclude evidence of other crimes. Here he refers to the trial evidence of crimes committed against Bobbie Neal and Melanie Sue Langston a/k/a Melanie Sue Polk. We considered that point on its merits on direct appeal and resolved it adversely to Neal. Neal v. State, 451 So.2d at 758-59. Under principles of collateral estoppel well established in our law, Neal is precluded from relitigating the point here. Neal is not entitled to an evidentiary hearing on this claim nor to any relief.

D.
Neal alleges that the Circuit Court committed error in failing to suppress his alleged custodial statements. Here he refers to the testimony of Stockton, California Detective Sgt. Wilson Stewart. We considered that point on its merits extensively on direct appeal and resolved it adversely to Neal. Neal v. State, 451 So.2d at 750-57. Under principles of collateral estoppel well established in our law, Neal is precluded from relitigating the point here. Neal is not entitled to an evidentiary hearing on this claim nor to any relief.

E.
Neal argues that, during the sentencing phase of the trial proceedings against him, the Circuit Court erred by effectively precluding jury consideration of non-statutory circumstances in mitigation of punishment. We considered that point on its merits on direct appeal and resolved it adversely to Neal. Neal v. State, 451 So.2d at 760-62. Under principles of collateral estoppel well established in our law, Neal is precluded from relitigating the point here. Neal is not entitled to an evidentiary hearing on this claim nor to any relief.

F.
Neal next charges that imposition of the death penalty was the result of the prosecuting attorney's improper and inflammatory argument and was based upon passion, prejudice and other impermissible factors. This, he says, constitutes a violation of rights secured to him under the Eighth and Fourteenth Amendments to the Constitution of the United States. We considered that point on its merits on direct appeal and resolved it adversely to Neal. Neal v. State, 451 So.2d at 762. Under principles of collateral estoppel well established in our law, Neal is precluded from relitigating the point here. Neal is not entitled to an evidentiary hearing on this claim nor to any relief.

G.
Neal argues finally that, under the circumstances of this case, the death sentence is both disproportionate and excessive and, accordingly, is inconsistent with rights secured to him by the Eighth and Fourteenth Amendments to the Constitution of the United States. We considered that point on its merits on direct appeal and resolved it adversely to Neal. Neal v. State, 451 So.2d at 762-63. Under principles of collateral estoppel well established in our law, Neal is precluded from relitigating the point here. Neal is not entitled to an evidentiary hearing on this claim nor to any relief.

VI.
The only relief to which Neal is entitled at this time, of course, is an evidentiary hearing.
We grant the application of Howard Monteville Neal for an evidentiary hearing on his claim that he was denied the right to take the witness stand and testify in his own behalf. The matter is remanded to the Circuit Court of Lawrence County for purposes of conducting such a hearing. Miss. Code Ann. § 99-39-23 and -27 (Supp. 1986); Tokman v. State, 482 So.2d 241 (Miss. 1986); Leatherwood v. State, 473 So.2d 964 *1285 (Miss. 1985); Culberson v. State, 412 So.2d 1184, 1186 (Miss. 1982). On all other issues and claims, Neal's application is denied.
PETITIONER'S MOTION TO VACATE OR SET ASIDE JUDGMENT AND SENTENCE DENIED IN PART, GRANTED IN PART, AND REMANDED TO THE CIRCUIT COURT OF LAWRENCE COUNTY FOR EVIDENTIARY HEARING
WALKER, C.J., ROY NOBLE LEE, P.J., and GRIFFIN, J., concur.
HAWKINS, P.J., and ANDERSON, ROBERTSON, PRATHER and SULLIVAN, JJ., concur in part, dissent in part.
HAWKINS, Presiding Justice, dissenting:
It was clear on Neal's original appeal that he is illiterate, and a mentally retarded person with the mind of a small child. The Legislature has imposed on this Court the duty in every death penalty case to make a study of the record, and aside from any trial errors, to determine if it is a case in which a life sentence should be imposed rather than a death penalty. This is a duty this Court is required by statute to fulfill. Miss. Code Ann. § 99-19-105(5), (6).
On his appeal, Neal v. State, 451 So.2d 743, 764 (Miss. 1984), I dissented as to his sentence, recommending, under our statutorily imposed responsibility, that his sentence be changed to life. This would have terminated this case.
Now, under post-conviction relief proceedings we are remanding this case to the circuit court to determine if Neal had effective counsel, and an excellent prospect for another lengthy trial, and additional appeals.
In my view, from the original record and Neal's present application, we have authority to remand this case to the circuit court for modification of the sentence to life. Miss. Code Ann. § 99-39-27(7)(a). This would simply be doing now what we should have done on the original appeal.
In my view this is the humane and sensible action to be taken in this case.
Loathing and repulsion only can be felt for the slayings committed by Neal. Had they been committed by a person with no mentally disturbed history, I would feel quite differently. Neal, however, was committed to a feeble-minded institution as a child, and later committed to our Mississippi State Hospital at Whitfield. He has gone from there to mental institutions elsewhere. He has the mind and personality of a small child. He has been brutally abused as only the weak and helpless can be. Surely we have a better use for our sorely taxed resources in battling crime than non-ending expenditures to see this mental basket case get the gas chamber.
As to the issue of ineffective assistance of counsel, I concur with the majority that Neal's inexperienced trial counsel could have rendered better assistance. Yet, I do not think their representation by any means failed to meet constitutional standards, or the test imposed by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In my view the majority is requiring more of legal counsel than required by our previous decisions, Strickland, or the Constitution.
ANDERSON, J., joins this opinion.
ROBERTSON, Justice, concurring in part, dissenting in part:
There is much in the opinion of the Court with which I agree. The issues discussed in Part IV are indeed precluded from relitigation via collateral estoppel. I, too, find that Culberson v. State, 412 So.2d 1184 (Miss. 1982) mandates an evidentiary hearing on Neal's claim that he was denied the right to testify in his defense. The majority is correct in its analysis of the way we look at an application for post-conviction relief.
On the claim of ineffective assistance of counsel, the majority states with reasonable fairness and completeness the substantive standards emanating from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and its Mississippi progeny. With respect, the opinion fails thereafter, for Howard Monteville *1286 Neal has indeed supplied us with specific fact allegations, supported by affidavits upon personal knowledge, which convince me that at an evidentiary hearing there would be a reasonable probability that he could establish a substantial violation of his right to effective assistance of counsel.
The majority says that Neal's showing is merely cumulative when compared with the evidence at his trial. To show that this conclusion is mistaken, I review the affidavits Neal has filed, all of which contain substantial information not a part of the trial record. I begin with the affidavit of John L. Clay, Esq., dated March 7, 1985, one of Neal's attorneys at trial, which includes the following:
3. We did not have the time or money to properly investigate Howard's case. We had no money to interview witnesses or travel. Consequently, I did not interview people who had known Howard at Whitfield and Ellisville. We were aware that Howard had been in prison in Oklahoma, but I did not get Howard's records or interview people who had dealt with him in Oklahoma. I did not interview any of his relatives other than his mother. I did not travel to California to interview witnesses and examine the police station environment in which Howard was held. I did not interview employers or other people who were familiar with his mental capabilities and home life to testify on his behalf. The first time I was able to talk to the California law enforcement officials who arrested Howard and obtained a confession from him was the day before Howard's first trial. We did not have a complete psychological examination of Howard which would have included a thorough investigation of his past medical and psychological history and a neurological examination. Had we had the time and money we would have done the above investigations for use at both trial and sentencing.
Neal presents affidavits of Thomas Leroy Norwood dated February 28, 1985, and Jack Cowley dated March 5, 1985, describing Neal's experiences in the Oklahoma prison system. One incident which presents the flavor of these affidavits is described by Norwood as follows:
4. Howard was completely defenseless in prison. He was raped, mocked and abused by other inmates. The treatment of Howard by other inmates was so horrible, I have difficulty discussing it. They would do whatever they wanted with him. For example, one time thirty or forty inmates forced him under a table in the yard. One by one they forced him to commit sodomy on them and then spit the semen in a bucket. Howard was frequently abused and there were other incidents of brutality inflicted on him. He was often placed in isolation for his own protection.
Both Norwood and Cowley stated in their affidavits that neither was ever contacted by anyone in Mississippi about Howard's case and that if they had been contacted each would have been willing to offer testimony at his trial.
Neal presents further the affidavit of A.G. Anderson dated March 5, 1985, describing his experience as a sixteen-year-old in the maximum security unit at the Mississippi State Hospital at Whitfield. He further presents the affidavit of James Johnson of March 8, 1985, describing his experiences while a resident at the Ellisville State School. Attached additionally are extensive records from the Oklahoma prison system, Mississippi State Hospital at Whitfield and the Ellisville State School. And, as well, Neal presents affidavits of other individuals who knew him at Ellisville.
With respect to Neal's charge that one of his attorneys, Joe Dale Walker, Esq., had a conflict of interest, he attaches the affidavit of Charles R. Bliss dated March 12, 1985, one of his present attorneys, which includes a description of a conversation with Walker.
2. During our conversation with Mr. Walker on March 6, he told us he had represented Bobby Neal during his divorce from Elaine Neal. He told us he had gotten to know Bobby Neal during this representation.
* * * * * *

*1287 3. On March 7, 1985, I again met with Mr. Walker. He again told me that he had represented Bobby Neal on his divorce. Mr. Walker then refused to sign an affidavit affirming the above facts.
Neal attaches to his application his own affidavit of March 8, 1985, in which he states under oath "I told my lawyers I wanted to testify at trial. But they would not let me. I would have testified to the above facts" (referring to the circumstances of his custodial interrogation and his prior experiences in mitigation of sentence). He also files the affidavit of John L. Clay, one of his attorneys, dated March 7, 1985, which, in pertinent part, reads: "He wanted to testify, but we did not put him on the stand."
The State counters with affidavits from District Attorney Phillips Singley and Assistant District Attorney Richard Douglas each stating that Neal desired to take the stand for the purpose of begging to be executed. The State also submits a supplemental affidavit from Neal's attorney, John Clay, to the effect that "any decision to testify or not testify was ultimately left to Mr. Neal."
There is a fundamental error in premise in the State's response, an error made clear by consideration of our procedural posture and its implications, all of which are described above. The State appears to be of the view that its function in responding to a post-conviction application is to present counter affidavits which contradict and overcome the petitioner's affidavits. But this is not the case at all, for we do not engage in trial by affidavits here any more than in any other proceeding. The State would be better advised to direct its responses to the idea that an evidentiary hearing is not required, that is, to the proposition that either the petitioner's showing is not in proper form or that the facts he alleges are supported by affidavits suggest no reasonable possibility that at an evidentiary hearing Neal may be able to establish a claim for relief from his sentence or conviction. The counter affidavit process is at the very earliest one in which the State should engage in connection with a motion for summary judgment. Miss. Code Ann. § 99-39-19(2) (Supp. 1986).
In my view, the showing Neal has made on his claim of ineffective assistance of counsel passes the threshold test described in the majority opinion. Neal's application contains allegations of specific facts and affidavits of witnesses based in substantial part upon personal knowledge. Miss. Code Ann. § 99-39-9(1) (Supp. 1986). It certainly does not plainly appear from the face of the motion and annexed exhibits, when coupled with consideration of the prior proceedings in the case, that Neal is entitled to no relief. Miss. Code Ann. § 99-39-15(2) (Supp. 1986). Rather, I am of the view that Neal's application "present(s) a substantial showing of the denial of a state or federal right" to effective assistance of counsel. Miss. Code Ann. § 99-39-27(5) (Supp. 1986). More specifically, having in mind the standards by reference to which claims of ineffective assistance of counsel are to be tested, I am of the view that Neal's present application, if followed up by proof at trial, may well entitle him to relief.
A point bears emphasis and clarification. I would not hold that, if proved, Neal's factual allegations would as a matter of law establish a claim of ineffective assistance of counsel. Such a holding would be premature for we are merely at the pleadings stage of the present proceedings. What, and all, I would have us hold today is that Neal's application suggests a reasonable possibility, first, that his trial counsel's performance under the totality of the circumstances was below minimally accepted standards and, second, that in consequence thereof he was prejudiced in the sense that confidence in the correctness of the outcome may be undermined. Conversely, considering the totality of Neal's application, his allegations, his affidavits and other attachments, I cannot say with confidence that his counsel's performance was adequate under Washington nor can we say with confidence that there is no reasonable probability that the outcome at trial would have been different had counsel done the things Neal now alleges they should have done.
*1288 I respectfully dissent from the denial of Neal's request for an evidentiary hearing on his claim of ineffective assistance of counsel.
PRATHER and SULLIVAN, JJ., join in this opinion.

ON PETITION FOR REHEARING
ROY NOBLE LEE, Chief Justice, for the Court:
Heretofore, petitioner Howard Monteville Neal filed an Application for Post-Conviction Relief after having been convicted of capital murder and sentenced to death. He cited nine (9) claims for relief and sought a new trial, reduction of sentence to life, and evidentiary hearings. On September 28, 1987, this Court acted upon his Application for Post-Conviction Relief and denied all claims except the claim that his attorneys failed to permit him to testify in his own behalf, in violation of the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and Article 3, Section 26 of the Mississippi Constitution of 1890. Petitioner Neal was granted an evidentiary hearing and an opportunity on that hearing to establish his claim.
On this Petition for Rehearing, petitioner again raises the claim that the trial court's sentencing instructions limited the jury to a consideration of only those statutorily-enumerated specific mitigating circumstances to be taken into account during the sentencing process and relies upon Hitchcock v. Dugger, 481 U.S. ___, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). Also, petitioner asks for rehearing on three (3) other claims advanced in the Application for Post-Conviction Relief. We address only the Hitchcock v. Dugger claim.
The defendant in Hitchcock was convicted in a Florida court of first degree murder. At the sentencing phase of the trial, defense counsel argued five (5) factors in mitigation: defendant's (1) youth; (2) lack of prior criminal or violent behavior; (3) difficult childhood; (4) potential for rehabilitation; and (5) voluntary surrender to police. The prosecutor urged the jury to limit its consideration to the seven (7) mitigating circumstances specifically enumerated in Florida's sentencing statute. The jury was instructed that the "mitigating circumstances which you may consider shall be the following. ..." The instruction then set forth the seven statutory mitigating circumstances. Of the five mitigating factors argued by the defense, only two, defendant's age and lack of prior criminal behavior, were included among the statutory mitigating circumstances read to the jury. The jury returned a verdict recommending death, and the judge sentenced the defendant accordingly, finding that the mitigating circumstances "as enumerated in the statute" were insufficient to outweigh the aggravating factors. The case was ultimately appealed to the United States Supreme Court. Noting that a defendant in a capital case is permitted to present any and all relevant mitigating evidence that is available, the Supreme Court held that the judge's instruction to the jury had the effect of precluding consideration of non-statutory mitigating circumstances and was, therefore, erroneous.
We understand the holding in Hitchcock to be limited to a determination of whether the jury is left with the impression that its consideration of mitigating circumstances is constrained to those circumstances specifically set forth in the sentencing statute, and that where the jury's consideration is so constrained, any resulting death sentence is invalid. Petitioner Neal was granted an instruction on mitigating circumstances which set out two general and all-inclusive mitigating circumstances. In our view, this instruction covered all the evidence in mitigation. In the original opinion on the direct appeal of this case, in addressing this claim, the Court said:
Neal's argument here overlooks an elementary premise underlying the granting of jury instructions generally. Before an instruction may be granted, there must be in the record an evidentiary basis for it. See, e.g., Johnson v. State, 416 So.2d 383, 388 (Miss. 1982); Dunaway v. State, 157 Miss. 615, 617, 128 So. 770 (1930). We thus look to see whether there is in this record an evidentiary basis for an *1289 "any other mitigating circumstances" instruction.
In his brief, Neal's counsel itemize the following "compelling mercy-evoking factors" he says the jury should have been allowed to consider.
"The appellant's [Neal] difficult and troubled childhood, his institutionalization at age 10 at the State school at Ellisville because of his learning difficulties and family difficulties, the lack of love and supervision during his early life (when he and his siblings were put up for adoption, the siblings were adopted, but no one would adopt appellant), the fact that he had a five-year-old daughter, the fact that he is so retarded that he is in the lower one percent of the population in intelligence with the mental ability of an 8-year-old child, and the fact that he suffers from an abnormal functioning of his brain which he is powerless to control."
With the possible exception of the fact that he has a five-year-old daughter, all of the above factors, considered singularly or together, relate to the two factors the Court instructed the jury to consider in mitigation. The ultimate factual conclusion which may reasonably be drawn from the evidentiary facts itemized by Neal's counsel would be either that the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance, or that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, or both. Neal's point thus reduces itself to a claim that, because he had a five-year-old daughter, he was entitled to "any other mitigating circumstances" instruction. That fact, in our view, is simply not a substantial evidentiary basis warranting the instruction Neal here urges should have been given. The assignment of error is rejected.
Neal v. State, 451 So.2d 743, 761-62 (Miss. 1984).
Therefore, we are of the opinion that the present case is distinguished from Hitchcock v. Dugger, supra, and that the petition for rehearing should be, and is, denied.
PETITION FOR REHEARING DENIED.
DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
HAWKINS, P.J., dissents without written opinion.
NOTES
[1] See Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed. 379 (1982).
[2] Post-conviction actions employ many of the procedural trappings of a civil action. The motion for summary judgment is available. Miss. Code Ann. § 99-39-19 (Supp. 1986); see also Rule 56, Miss.R.Civ.P. As in civil actions, we do not resolve genuine issues of material fact by a process of trial by affidavit.