## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CP-00357-SCT

*DANIEL F. GOSS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/25/97 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 12/10/98 |
| MOTION FOR REHEARING FILED: | 1/14/99 |
| MANDATE ISSUED: | 4/12/99 |

**BEFORE PITTMAN, P.J., ROBERTS AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. During the April 1995 term, the Grand Jury of Newton County, Mississippi, indicted Daniel F. Goss on the charges of Burglary as an Habitual Offender pursuant to Miss. Code Ann. §§ 97-17-19 and 99-19-83. Goss had previous felony convictions for the crimes of burglary, escape from imprisonment, and rape.

¶2. On April 13, 1995, Goss pled guilty to the charge of Burglary. Subsequently, he was adjudged to be an habitual offender as defined by Miss. Code Ann. § 99-19-81[1] and sentenced to a term of ten (10) years imprisonment, without the possibility of parole or early release.

¶3. Aggrieved by the trial court's decision, Goss appeals *pro se*, and raises the following issues:[2]

**I. WHETHER THE STATE VIOLATED THE TERMS OF THE PLEA BARGAIN AGREEMENT.**

## II. WHETHER GOSS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

## III. WHETHER THE TRIAL COURT JUDGE IMPERMISSIBLY ENGAGED IN PLEA BARGAIN NEGOTIATIONS.

## IV. WHETHER GOSS'S GUILTY PLEA WAS VOLUNTARY AND FREELY GIVEN.

## <u>LEGAL ANALYSIS</u>

### I. WHETHER THE STATE VIOLATED THE TERMS OF THE PLEA BARGAIN AGREEMENT.

¶4. Goss argues that a plea bargain agreement was reached between court-appointed defense counsel, Honorable Robert M. Logan, and District Attorney Ken Turner, whereby Goss would plead guilty to burglary. It was Goss's understanding that in exchange for his guilty plea, the habitual offender portion of the indictment would be dismissed. Accordingly, Goss believed that he would receive a ten (10) year sentence with parole eligibility and which would run concurrent with any other sentence(s) he may incur.

¶5. Goss alleges that this agreement was rescinded by the District Attorney's office, since neither Judge Gordon nor the victims of the burglary were willing to accept or consent to the terms of the agreement. Goss maintains that a new agreement was proposed whereby Goss would plead guilty to burglary and the State would pursue habitual offender status under Miss. Code Ann. § 99-19-81 (habitual offender *without* prior violent crime conviction), as opposed to Miss. Code Ann. § 99-19-83 (habitual offender *with* violent crime conviction) under which he was originally indicted. Pursuant to this agreement, it was Goss's understanding that the State would recommend a ten (10) year sentence without the possibility of parole, which is the mandatory sentence under § 99-19-81.

¶6. Goss pled guilty to the charge of burglary and the State recommended that the indictment be amended to reflect § 99-19-81 instead of § 99-19-83 and Circuit Court Judge Marcus D. Gordon sentenced Goss to the mandatory ten (10) year sentence without possibility of parole. Had Goss rejected the terms of the second agreement, his only other possible courses of action would have been to either (1) plead guilty to the original charges as alleged in the indictment, or (2) plead not guilty to the original charges as alleged in the indictment. Under either of these courses of action, Goss would have been subject to a mandatory life sentence without the possibility of parole.

¶7. Goss relies upon the United States Supreme Court's decision in *Santobello v. New York*, 404 U.S. 257 (1971) as authority for the proposition that the prosecutor breached his agreement by proposing the second agreement which included different terms than that originally agreed to by Goss. However, this Court should find that Goss's reliance on *Santobello* is unfounded. There is a major distinction between the facts of the case at bar and those in *Santobello*. The defendant in *Santobello* had already pled guilty when the prosecution changed its recommendation for sentencing, whereas in the case at bar, Goss was advised of the second agreement and agreed to the second agreement **before** he pled guilty. Had Goss not been advised of the recission of the State's original agreement when he pled guilty, his reliance on *Santobello* would be understandable. However, Goss admits that he was aware of the State's recission of the original agreement as well as the offer of a new agreement with different terms **before** he pled guilty to

the charge of burglary.

¶8. Simply because the State rescinded its original agreement in what Goss refers to as the "twelfth hour," this is not sufficient to show that he was "coerced" into pleading guilty under the revised agreement. At any time, Goss could have invoked his right to plead not guilty and proceed to trial. While Goss may feel aggrieved by the fact that the second agreement was not as favorable to him as the original agreement, the State is under no obligation to honor the demands of a criminal defendant. Nor is the trial judge required to honor the terms of any recommendation made as a result of a plea agreement.

¶9. It should also be noted that the record contains a statement made by Mr. Logan, Goss's court-appointed defense counsel. Mr. Logan's statement does not support Goss's allegations in that there is no mention of an original agreement that was changed at the last hour. This Court will not rely solely on assertions made in the briefs; it is the appellant's duty to establish any facts necessary to establish his claim of error. *Ross v. State*, 603 So. 2d 857, 861 (Miss. 1992). Goss has provided no support for his allegation that there was in fact an original agreement, let alone a "twelfth hour" recission of such agreement. Accordingly, the trial court's decision is affirmed.

## II. WHETHER GOSS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

¶10. Goss argues that he was denied due process of law because his appointed defense counsel, Honorable Robert Logan, possessed a conflict of interest which prejudiced his ability to represent the defendant. Mr. Logan served as attorney for the Newton County Board of Supervisors. In this capacity, Mr. Logan was currently representing Newton County Sheriff, James Hanna, in three (3) civil matters in federal district court. Because Mr. Logan expected Deputy Sheriff Ron Davis to be a material witness in the case against Goss, Mr. Logan filed a Motion to Withdraw as Counsel on March 31, 1995. However, according to Mr. Logan's statement regarding this matter, this motion was never heard by the trial judge because Judge Gordon indicated that no plea bargaining would be allowed after commencement of motion hearings. Also according to Mr. Logan, at this time, Judge Gordon asked Goss if he wanted to plea bargain and after Goss indicated he did want to plea bargain the parties retired from chambers and worked out a plea arrangement, which was subsequently approved by the Court.

¶11. The standard for reviewing claims of ineffective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Mississippi adopted the *Strickland* standard in *Stringer v. State*, 454 So. 2d 468, 476-78 (Miss. 1984) and has consistently applied this standard in subsequent cases. *Neal v. State,* 525 So. 2d 1279, 1281 (Miss. 1987) (citing *Ferguson v. State*, 507 So. 2d 94, 95-97 (Miss. 1987); *Waldrop v. State*, 506 So. 2d 273, 275-76 (Miss. 1987); *Alexander v. State*, 503 So. 2d 235, 240-41 (Miss. 1987); *King v. State*, 503 So. 2d 271, 273-76 (Miss. 1987); *Leatherwood v. State*, 473 So. 2d 964 (Miss. 1985)).

¶12. Our inquiry under *Strickland* is twofold:

> (1) Was defense counsel's performance deficient when measured by the objective standard of reasonable professional competence, and if so

> (2) Was [the appellant] prejudiced by such failure to meet that standard?

*Hansen v. State*, 649 So. 2d 1256, 1259 (Miss. 1994). Additionally, "[a]n ineffective assistance claim by its very nature refers to the totality of counsel's pre-trial and trial performance." *Neal v. State*, 525 So. 2d

1279, 1281 (Miss. 1987). "At the outset, defense counsel is presumed competent and the burden of proving otherwise rests on [the appellant]." **Hansen,** 649 So. 2d at 1258.

¶13. Goss does not allege that Mr. Logan's performance was deficient. Instead Goss argues that he was prejudiced by having Mr. Logan as counsel, since he was forced to plead guilty or go to trial and be represented by someone with an apparent conflict of interest[3]. However, there is nothing in the record to support Goss's assertion that the only reason he pled guilty was to avoid being represented at trial by Mr. Logan. Conversely, court transcripts reveal that Goss understood the rights he waived by pleading guilty, that he did not wish to ask the trial judge any questions concerning this matter, and that he was not threatened or intimidated in any way into pleading guilty. Additionally, there is nothing in Mr. Logan's statement that supports Goss's allegations. In fact, Mr. Logan's statement indicates that Goss advised the trial judge that he wanted to plea bargain before the arrangements were worked out. Once again, Goss has failed to provide any factual support of the allegations in his brief. *See* ***Ross v. State***, 603 So. 2d 857, 861 (Miss. 1992).

¶14. Furthermore, Goss shows no prejudice. Had he not accepted the plea agreement, he would have been facing a mandatory life sentence upon conviction. Goss, of course, alleges that he was prejudiced by the State's recission of the original plea agreement wherein he would only receive a 10 year sentence with the possibility of parole. However, Goss has failed to provide any factual evidence showing that there was an original agreement. Moreover, even if there had been an original agreement, the parties were not bound by its terms since Goss had not yet entered his plea. Additionally, the trial judge is not bound by any plea agreement or any recommendations made by the parties. Accordingly, this Court finds that this issue is without merit.

### III. WHETHER THE TRIAL COURT JUDGE IMPERMISSIBLY ENGAGED IN PLEA BARGAIN NEGOTIATIONS.

¶15. Goss alleges that Judge Gordon actively participated in plea bargain negotiations and thereby violated applicable rules of court, which ultimately coerced him into pleading guilty. Specifically, Goss argues that during a pretrial motion hearing, Judge Gordon stated to the defendant (1) that if pretrial motions are presented to the court, then the defendant will not be allowed to enter into any plea bargain agreement, (2) that the defendant may be required to proceed to trial on the merits of the case, and (3) that if convicted, the defendant would be sentenced to serve life imprisonment without parole. Goss relies upon ***United States v. Miles***, 10 F.3d 1135 (5th Cir. 1993), wherein the Fifth Circuit Court of Appeals ruled that federal district court judges are prohibited by Fed. R. Crim. Pro. 11(e)(1) from judicial involvement in plea-bargain negotiations.

¶16. This Court takes note that Mississippi judges are likewise prohibited from participating in plea discussions pursuant to URCCC 8.04(B)(4) which reads in pertinent part:

> The trial judge shall not participate in any plea discussion. The court may designate a cut-off date for plea discussions and may refuse to consider the recommendation after that date.

¶17. However, URCCC 8.02(B)(2)(b) also provides that any "recommendation [made] to the trial court for a particular sentence . . . will not be binding upon the court." Accordingly, the decision to accept or reject a plea agreement is purely within the trial judge's discretion. Furthermore, each of Judge Gordon's statements about which Goss complains was true. If Goss had not pled guilty, he would have proceeded to

trial. If Goss had been convicted, upon proper proof of his habitual offender status, Goss would have been facing a mandatory life imprisonment without the possibility of parole. Therefore, not only was Judge Gordon not actively participating in plea negotiations, he was ensuring that Goss was fully informed of what he would be facing if he chose not to go forth with plea bargain negotiations.

¶18. Furthermore, Judge Gordon did not err in advising Goss and his counsel that once pretrial motions were presented to the court, Goss would not be allowed to enter into any plea bargain agreement. In accordance with URCCC 8.04(B)(4), "[t]he court may designate a cut-off date for plea discussions and may refuse to consider the recommendation after that date." By advising Goss that no plea agreement would be considered once pretrial motions were heard by the court, Judge Gordon was acting within his authority. This Court notes that this procedure promotes judicial efficiency in that the court does not spend time hearing pretrial motions that are automatically rendered moot in the event the defendant pleads guilty. Accordingly, there is no merit to this claim.

## IV. WHETHER GOSS'S GUILTY PLEA WAS VOLUNTARILY AND FREELY GIVEN.

¶19. As previously mentioned, Goss argues that he was coerced into accepting the second plea bargain agreement. Among the reasons Goss asserts are Judge Gordon's refusal to rule on his pretrial motions, defense counsel's alleged conflict of interest, and his impression that he had no choice but to plead guilty to or go to trial with an attorney who could not adequately represent him. However, as also previously noted, the court transcript does not support Goss's assertions regarding this matter.

¶20. When determining the validity of a guilty plea, this Court has held that a "guilty plea will only be binding if it is voluntarily and intelligently entered." *Drennan v. State*, 695 So. 2d 581, 584 (Miss. 1997) (quoting *Banana v. State*, 635 So. 2d 851, 854 (Miss. 1994)). *See, e.g.*, *Boykin v. Alabama*, 395 U.S. 238 (1969); *Alexander v. State*, 605 So. 2d 1170, 1172 (Miss. 1992); *Myers v. State*, 583 So. 2d 174, 177 (Miss. 1991); *Wilson v. State*, 577 So. 2d 394, 397 (Miss. 1991). "In order for a guilty plea to be voluntarily and intelligently entered, a defendant must be advised about the nature of the crime charged against him and the consequences of the guilty plea." *Banana*, 635 So. 2d at 854. Specifically, Rule 8.04(A)(4) of the Uniform Rules of Circuit and County Court Practice, provides:

*Advice to the Defendant.* When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the defendant personally and to inquire and determine:

a. That the accused is competent to understand the nature of the charge;

b. That the accused understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law;

c. That the accused understands that by pleading guilty (s)he waives his/her constitutional rights of trial by jury, the right to confront and cross-examine adverse witnesses, and the right against self-incrimination; if the accused is not represented by an attorney, that (s)he is aware of his/her right to an attorney at every stage of the proceeding and that one will be appointed to represent him/her if (s)he is indigent.

URCCC 8.04(A)(4).

¶21. The court records indicate that Goss was advised of his constitutional rights before entering his guilty plea. Specifically, at Goss's guilty plea hearing, Goss was questioned by Judge Gordon regarding his understanding of his constitutional rights, the consequences of a guilty plea and his competency to enter a plea. The following court transcripts specifically demonstrate that Goss was in fact advised of each constitutional right he was waiving by pleading guilty.

¶22. In *Smith v. State*, 636 So. 2d 1220 (Miss. 1994), this Court stated "[w]hen we compare [Smith's] previous sworn testimony during his guilty plea with his current affidavit, the latter is practically rendered a 'sham,' thus allowing summary dismissal of the petition to stand." *Id.* at 1224 (citation omitted). The case *sub judice* is similar to *Smith* in that Goss's pleadings are in direct conflict with the court transcript. The record clearly belies every allegation Goss makes in his Motion for Post-Conviction Relief. Therefore, there is no merit to Goss's claim that his guilty plea was not freely and voluntarily given.

## CONCLUSION

¶23. It is the appellant's duty to provide factual support for his allegations. However, there is no support in the record for any of Goss's assertions contained in his brief. Conversely, the record provides direct evidence in contradiction of Goss's allegations. Accordingly, the trial court's decision is affirmed.

**¶24. DENIAL OF POST-CONVICTION RELIEF AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE, ROBERTS, MILLS AND WALLER, JJ., CONCUR. BANKS, J., CONCURS IN RESULT ONLY.**

1. In order for the court to be able to accept Goss's guilty plea and to accept the State's recommendation of ten (10) years imprisonment pursuant to a plea agreement, the District Attorney moved the court for permission to amend the indictment from showing Goss as an habitual offender under 99-19-83 to 99-19-81.

2. Defendant Goss raised eight separate issues in his appeal brief. However, these issues were so interrelated they have been consolidated into four general issues.

3. Goss relies upon Mississippi Bar Ethics Opinion #224 which was rendered on April 10, 1995. However, by its own terms, this opinion was not effective until the first Monday in January 1996. Goss pled guilty on April 13, 1995, which was approximately eight months prior to enforcement of this rule. Accordingly, Goss's reliance on this opinion is without merit.