KING, JUSTICE, DISSENTING:
 

 ¶ 29. The sole issue in this case is whether Thomas Loden is entitled to an evidentiary hearing on his petition for post-conviction relief. This Court need not and should not reach the merits of his petition, because he is entitled to an evidentiary hearing in the trial court. Accordingly, I respectfully dissent.
 

 ¶ 30. The parties disagree about whether a 500-milligram dose of midazolam is an "appropriate anaesthetic or sedative" that will render Loden "unconscious, so that the execution process should not entail a substantial risk of severe pain" pursuant to state statute.
 
 Miss. Code Ann. § 99-19-51
 
 (1) (Supp. 2018). Loden presents two affidavits from Dr. Craig Stevens to support his argument that midazolam is incapable of rendering an inmate unconscious and insensate to pain. The State presents Dr. Richard Antognini's affidavit, in which he opines that 500 milligrams of midazolam will render an inmate "completely unconscious and insensate to pain."
 

 ¶ 31. When a petitioner and the State produce contradictory affidavits in post-conviction proceedings, an evidentiary hearing should be ordered when the contested facts are material and the affidavit produced by the petitioner is not a "sham."
 
 Wright v. State
 
 ,
 
 577 So.2d 387
 
 , 390 (Miss. 1991) ("In order for a contested fact to require an evidentiary hearing it must be material. Moreover, where an affidavit is overwhelmingly belied by unimpeachable documentary evidence in the record such as, for example, a transcript or written statements of the affiant to the contrary to the extent that the court can conclude that the affidavit is a sham no hearing is required.");
 
 see also
 

 Neal v. State
 
 ,
 
 525 So.2d 1279
 
 , 1281 n.2 (Miss. 1987) ("Post-conviction actions employ many of the procedural trappings of a civil action.... As in civil actions, we do not resolve genuine issues of material fact by a process of trial by affidavit.").
 
 [12]
 

 ¶ 32. Loden frames the issue as a "simple matter of enforcing the statutory command." He clarifies that the instant petition does not raise an Eighth Amendment method-of-execution challenge, but is grounded solely in state law.
 

 ¶ 33. The majority of cases that discuss midazolam address constitutional arguments.
 
 See
 

 Glossip v. Gross
 
 , --- U.S. ----,
 
 135 S.Ct. 2726
 
 , 2739-40,
 
 192 L.Ed.2d 761
 
 (2015). Here, the majority argues that
 
 Glossip
 
 is instructive to the state-law claim at issue. The Court in
 
 Glossip
 
 , however, was not presented with a state-law based claim; instead, it considered whether midazolam violates the Eighth Amendment. The petitioners in
 
 Glossip
 
 were on death row in Oklahoma.
 

 Id.
 

 at 2735
 
 . In contrast to Section 99-19-51's requirement that the State of Mississippi use "an appropriate anesthetic or sedative[,]" Oklahoma's statute does not contain a specific directive. Oklahoma's statute provides, "The punishment of death shall be carried out by the administration of a lethal quantity of a drug or drugs until death is pronounced by a licensed physician according to accepted standards of medical practice." Okla. Stat. Ann. § 1014. Additionally,
 
 Glossip
 
 was not dispositive regarding midazolam; the district court found that the plaintiffs were not entitled to a preliminary injunction because their claims did not have a substantial likelihood of success; the Supreme Court affirmed this decision, but did not rule that the plaintiffs also should lose the substantive case.
 
 Glossip
 
 ,
 
 135 S.Ct. at 2736, 2746
 
 . And, importantly, the Supreme Court was reviewing a more developed record including testimony and documents, not simply affidavits.
 
 [13]
 

 Id.
 

 at 2735
 
 . It did not itself weight the expert opinions, as the majority inappropriately does; rather, it found that the trial court was not clearly erroneous in its conclusion regarding midazolam after the trial court held a three-day evidentiary hearing.
 

 Id.
 

 at 2739
 
 . Thus,
 
 Glossip
 
 is not dispositive regarding whether an evidentiary hearing is warranted on a state-law claim. Indeed, a thorough evidentiary hearing did occur in
 
 Glossip
 
 , providing the Supreme Court with an adequate record and allowing the district court to decide evidentiary matters and matters of credibility. The majority goes so far as to chastise Dr. Stevens for failing to cite enough "proof" for his conclusion that he was unable to determine the ceiling effect for midazolam, even criticizing him for failing to "provide any evidence" regarding a ceiling effect. Maj. Op. ¶ 17. However, the majority denies the very evidentiary hearing in which Loden and Dr. Stevens would have the opportunity to present proof and evidence under the Mississippi Rules of Evidence. Moreover, in
 
 Glossip
 
 , the Supreme Court specifically held that the lack of research on non-therapeutic doses of midazolam applies equally to both parties' cases, noting that "because a 500-milligram dose is never administered for a therapeutic purpose, extrapolation was reasonable."
 
 Glossip
 
 ,
 
 135 S.Ct. at 2741
 
 .
 

 ¶ 34. In addition to sharply criticizing Dr. Stevens for extrapolations that the Supreme Court found acceptable, the majority attempts to paint Dr. Stevens's affidavits as a sham and "contradictory" because "Stevens opines that a 500-milligram dose of midazolam cannot render an inmate unconscious, yet in the very same
 report, Stevens concedes that much smaller doses of midazolam are routinely used for sedation and anesthesia." Maj. Op. ¶ 16. To hold that these two statements are "contradictory" misrepresents or misunderstands medical terminology, a misunderstanding that might be corrected at an evidentiary hearing. "Unconscious" is defined as "not conscious" and "unconsciousness" is defined as "an imprecise term for severely impaired awareness of self and the surrounding environment; most often used as a synonym for coma or unresponsiveness."
 
 Unconscious
 
 , PDR Medical Dictionary (3d ed. 2006);
 
 Unconsciousness
 
 , PDR Medical Dictionary (3d ed. 2006). "Sedation" is defined as "the act of calming, especially by the administration of a sedative" and "sedative" is defined as "calming; quieting" and "a drug that quiets nervous excitement."
 
 Sedation
 
 , PDR Medical Dictionary (3d ed. 2006);
 
 Sedative
 
 , PDR Medical Dictionary (3d ed. 2006). "Anesthesia" is defined as a "loss of sensation resulting from pharmacological depression of nerve function."
 
 Anesthesia
 
 , PDR Medical Dictionary (3d ed. 2006). Clearly, a person can lose some of his sensation (anesthesia ) without becoming unconscious. A person can also become calm (sedative) without becoming unconscious. Dr. Stevens's admission that midazolam is used for sedation and anesthesia in no way contradicts his assertion that it cannot render an inmate unconscious.
 

 ¶ 35. In fact, Dr. Stevens was the expert witness for prisoners in the Ohio litigation regarding midazolam, and the trial court found that,
 

 [a]lthough there was no time to conduct a
 

 Daubert
 

 hearing, Plaintiffs presented an adequate foundation in this hearing which, when coupled with what was presented in January, established a sufficient basis to find Dr. Stevens was qualified to offer opinions on the subjects on which he was presented so as to comply with Fed. R. Evid. 702.
 

 In re Ohio Execution Protocol Litig.
 
 , No. 2:11-cv-1016,
 
 2017 WL 5020138
 
 (S.D. Ohio Nov. 3, 2017). In the appeal of that case, the United States Court of Appeals for the Sixth Circuit, while ultimately finding that the petitioners had not proved that midazolam is "sure or very likely" to cause serious pain, conceded that "the plaintiffs have shown some risk that Ohio's execution protocol may cause some degree of pain, at least to some people[,]" a showing made primarily through Dr. Stevens's testimony.
 
 In re Ohio Execution Protocol
 
 ,
 
 860 F.3d 881
 
 , 890 (6th Cir. 2017).
 
 [14]
 

 ¶ 36. Furthermore, the majority parses two phrases out of approximately thirty-five pages of scientific reports and gaslights its readers into thinking that these two phrases, taken out of context, magically render the affidavit so contradictory as to be a sham. The majority's conclusion, which is essentially that any scientist who disagrees with the majority's unscientific opinion on midazolam is a sham, is simply not supported by the expert reports, nor is
 it supported by caselaw that by and large allows and examines contradictory expert opinions on midazolam. The information upon which Dr. Stevens bases his conclusions does not appear to be a sham, and reasonable minds in the scientific community often disagree regarding issues that cannot be proven to certainty, which is exactly what occurred here. To declare the affidavit a sham and speculatively inadmissible under
 

 Daubert
 

 and the Rules of Evidence without a hearing and without a full record of scientific testimony goes far beyond the appropriate role of an appellate court. It also seemingly ignores the Supreme Court's warnings that scientific controversies are beyond the expertise of the courts by declaring its scientific opinion to be more informed than that of an actual scientist who other courts have found to be an acceptable expert.
 

 ¶ 37. Loden provides a Montana case which addresses a similar deviation-from-state-law challenge, and distinguishes such a claim from a constitutional challenge.
 
 Smith v. Montana
 
 , No. BDV-2008-303,
 
 2015 WL 5827252
 
 (Oct. 6, 2015). There, the petitioners challenged whether pentobarbital-the drug selected by the Montana Department of Corrections to perform lethal injections-meets the legislative directive that the drug be an "ultra-fast acting barbiturate."
 

 Id.
 

 at *2 ;
 
 see also
 

 Mont. Code Ann. § 46-19-103
 
 (3). The Montana court went to great lengths to distinguish this state-law challenge from an Eighth Amendment claim:
 

 [I]t is important to clarify the nature of this case. This Court has not been asked and will not make a determination as to whether lethal injection of the Plaintiffs constitutes cruel and unusual punishment. This case is not about the constitutionality or appropriateness of the death penalty in Montana. This case is not about whether the use of pentobarbital in a lethal injection setting is cruel and unusual or if pentobarbital in the doses contemplated by the State of Montana would produce a painless death.... This case is only about whether the drug selected by the Department of Corrections to effectuate the Plaintiffs' lethal injections, pentobarbitol, meets the legislatively required classification of being an "ultra-fast acting barbiturate."
 

 Id.
 

 at **1-2
 
 . After a hearing, the court found that pentobarbital did not meet Montana's statutory requirements and enjoined the state from using the drug in its lethal injection protocol.
 

 Id.
 

 at **1-2
 
 .
 

 ¶ 38. Taking Loden's claim as a state-law challenge-that is, whether midazolam conforms with Section 99-19-51's requirement that the State use "an appropriate anesthetic or sedative" which "is likely to render the [Loden] unconscious, so that the execution process should not entail a substantial risk of severe pain"-he has presented sufficient support to warrant an evidentiary hearing. Loden and the State have produced competing affidavits on a material issue. And, although the State presents a
 

 Daubert
 
 -
 
 style defense
 
 [15]
 
 to Dr. Stevens's affidavit, his affidavit is not a "sham."
 
 Wright
 
 ,
 
 577 So.2d at 390
 
 ("[W]here an affidavit is overwhelmingly belied by unimpeachable documentary evidence in the record such as, for example, a transcript or written statements of the affiant to the contrary to the extent that the court can conclude that the affidavit is a sham no hearing is required.").
 

 ¶ 39. At this point, the relevant inquiry before the Court is whether Loden is entitled to a hearing.
 
 Cf.
 

 Thorson v. State
 
 ,
 
 76 So.3d 667
 
 , 676 n.14 (Miss. 2011) ("the evidence sufficient to warrant the granting of an evidentiary hearing ... in no way permeates the trial judge's testing and weighing of the evidence");
 
 see also
 

 Rowland v. Britt
 
 ,
 
 867 So.2d 260
 
 , 262 (Miss. Ct. App. 2003) ("The purpose of an evidentiary hearing is for the court to receive evidence in order to make findings of fact.").
 

 ¶ 40. Loden, through Dr. Stevens's affidavits, has established a
 
 prima facie
 
 claim. The affidavits are not a "sham." As such, an evidentiary hearing is warranted, especially when considering the heightened standard of review we apply to death penalty cases.
 
 [16]
 

 See
 

 Harveston v. State
 
 ,
 
 597 So.2d 641
 
 , 643 (Miss. 1992) (petition meeting basic pleading requirements is sufficient to mandate an evidentiary hearing unless it appears beyond doubt that petitioner can prove no set of facts which would entitle him to relief). I would therefore grant Loden's petition and remand to the trial court for an evidentiary hearing.
 

 KITCHENS, P.J., JOINS THIS OPINION.
 

 In
 
 Neal
 
 , Justice Robertson explained in his separate opinion that the State should respond to a petitioner's affidavit in PCR proceedings by showing that an evidentiary hearing is not warranted, not by presenting a contradictory affidavit:
 

 The State appears to be of the view that its function in responding to a post-conviction application is to present counter affidavits which contradict and overcome petitioner's affidavits. But this is not the case at all, for we do not engage in trial by affidavits here any more than any other proceeding. The State would be better advised to direct its responses to the idea that an evidentiary hearing is not required, that is, to the proposition that either the petitioner's showing is not in proper form or that the facts he alleges are supported by affidavits suggesting no reasonable possibility that at an evidentiary hearing [the petitioner] may be able to establish a claim for relief from his sentence or conviction. The counter affidavit process is at the very earliest one in which the State should engage in connection with a motion for summary judgment.
 
 Miss. Code Ann. § 99-39-19
 
 (2) (Supp. 1986).
 

 Neal
 
 ,
 
 525 So.2d at 1287
 
 (Robertson, J., concurring in part, dissenting in part).
 

 "[A]fter discovery, the District Court held a 3-day evidentiary hearing on the preliminary injunction motion. The District Court heard testimony from 17 witnesses and reviewed numerous exhibits."
 
 Id.
 
 at 2735.
 

 In an attempt to bolster its finding that Dr. Stevens's affidavit is a sham, the majority misrepresents the findings of the Sixth Circuit. After an
 
 evidentiary hearing
 
 , the Sixth Circuit took no issue with Dr. Stevens's qualifications and even credited his testimony, but simply determined that it did not meet the legal standard the plaintiff was required to meet. Crediting Dr. Stevens's testimony is a far cry from determining that his affidavit is so untrustworthy as to be a sham. The majority appears to find that whenever two experts disagree, the expert who "loses" automatically becomes a scientific sham. Such a ruling is dangerously contrary to science and the law. Further, the majority's misrepresentations of caselaw and the affidavit actually bolster the notion that an evidentiary hearing is needed, because the majority factfinds and makes misrepresentations and leaps from facts to determine that the affidavit is a sham.
 

 In fact, in
 
 Glossip
 
 , the petitioners challenged the state's expert, who was a doctor of pharmacy, claiming that inconsistencies in his testimony existed. The district court denied the
 

 Daubert
 

 challenge, and the Supreme Court upheld that decision.
 

 Because execution is final, it "weighs in favor of hearing plaintiffs' claims."
 
 McGehee v. Hutchinson
 
 , No. 4:17-cv-00179 KGB,
 
 2017 WL 1381663
 
 , at *1 (E.D. Ark. April 15, 2017). A review of the caselaw indicates that courts generally hold evidentiary hearings regarding midazolam claims.