# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01649-COA

**ASHLEY BRYANT**                                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                         **APPELLEE**

DATE OF JUDGMENT:              09/23/2015
TRIAL JUDGE:                  HON. JEFF WEILL SR.
COURT FROM WHICH APPEALED:    HINDS COUNTY CIRCUIT COURT,
                             FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:       DAVID NEIL MCCARTY
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                             BY: BILLY L. GORE
DISTRICT ATTORNEY:            ROBERT SHULER SMITH
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED - 02/27/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     Following trial, a jury in the Hinds County Circuit Court found Ashley Bryant guilty of intimidating a witness in violation of Mississippi Code Annotated section 97-9-55 (Rev. 2014). The circuit court sentenced Bryant to serve two years in the custody of the Mississippi Department of Corrections. Bryant appeals, arguing the indictment was fatally flawed, and the trial judge improperly involved himself in Bryant's plea deal by refusing to accept the State's recommended sentence. Finding no error, we affirm.

### BACKGROUND

¶2.     On March 21, 2012, Freda Austin testified as a State's witness in the trial of Cortez

Washington, who was later found guilty of armed robbery. As she was testifying, Austin recognized a woman in the audience as a regular customer at the store where Austin worked. The woman, later identified as Bryant, is Cortez's aunt. Later the same day, an "angry" and "bothered" Bryant went to the store and asked to speak to Austin. Bryant was informed that Austin was not there because she had been testifying in court.

¶3. The following day, Bryant and Cortaia Washington, Cortez's sister, returned to the store and asked the store manager if they could speak to Austin. The manager testified that she knew why the women were there and that they needed to leave; however, before she could get them to leave, Austin came from the back area where she had gone to get some pain reliever. Upon seeing Austin, Bryant started yelling at her about the case and her testimony. The store manager positioned herself between Austin and the two women, but Bryant was able to reach around her and hit Austin in the face. The store manager pushed Bryant away, and it was then that Washington took the opportunity to attack Austin. The testimony at trial was that Washington punched Austin several times and pulled out some of her hair. The incident lasted only a couple of minutes before Bryant and Washington left the store. Austin testified that she was not afraid at the time of the incident and that she believed the incident occurred in retaliation for her testimony at Cortez's trial.

¶4. Bryant and Washington originally were tried together, but the jury was unable to reach a verdict. They then were tried separately. Prior to the second trial, the State and Bryant moved the circuit court to enter an order of nolle prosequi in the case; however, the circuit court denied the motion and rejected the State's plea recommendation. The case later went

to trial, and the jury found Bryant guilty of intimidating a witness.

¶5.     Bryant appeals and raises the following issues for our review: whether her indictment was fatally flawed; and whether the trial court improperly involved itself in her attempted plea deal.

## DISCUSSION

### I.      Indictment

¶6.     Bryant's indictment stated that she "unlawfully and feloniously attempt[ed] to intimidate Freda Austin, a witness in a criminal case, by force, abuse[,] or reprisals or threats thereof, after the performance of her duties as a witness . . . ." Bryant now argues her indictment was fatally defective because it did not specify whether the manner of intimidation was verbal or physical. Bryant also argues the indictment did not explain "how [the statute] applied, with specific facts." We note that Bryant did not object to the legal sufficiency of her indictment at trial. However, it is settled that objections to the sufficiency of an indictment may be raised for the first time on appeal. *See*, *e.g.*, *Tucker v. State*, 47 So. 3d 135, 137 (¶8) (Miss. 2010); *Ross v. State*, 954 So. 2d 968, 1015 (¶126) (Miss. 2007). Thus, we will review this issue for error.

¶7.     Whether an indictment is fatally defective is a question of law that we review de novo. *Moten v. State*, 20 So. 3d 757, 759 (¶4) (Miss. Ct. App. 2009).

¶8.     "The chief objective of an indictment is to provide a defendant fair notice of the crime charged." *Davis v. State*, 171 So. 3d 537, 540 (¶11) (Miss. Ct. App. 2015) (citing *Hines v. State*, 126 So. 3d 985, 987 (¶10) (Miss. Ct. App. 2013)). Uniform Rule of Circuit and County

3

Court 7.06[1] mandated that an indictment shall contain "the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." Further, "[a]n indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Davis*, 171 So. 3d at 540 (¶11) (quoting *Gilmer v. State*, 955 So. 2d 829, 836-37 (¶24) (Miss. 2007)). The Mississippi Supreme Court has held that "[s]o long as from a fair reading of the indictment[,] taken as a whole[,] the nature and cause of the charge against the accused are clear, the indictment is legally sufficient." *Harrison v. State*, 722 So. 2d 681, 687 (¶22) (Miss. 1998) (quoting *Henderson v. State*, 445 So. 2d 1364, 1368 (Miss. 1984)).

¶9. Here, the indictment charged that Bryant attempted to intimidate Austin "by force, abuse or reprisals or threats thereof." Bryant argues this language is defective because it did not specifically state how she violated section 97-9-55, and as a result, she was not provided fair notice. However, we find that in reading the indictment as a whole, the nature and cause of the charge against Bryant are clear, and the indictment contains the necessary elements of the crime charged. Moreover, Bryant has not shown that she was unaware of what crime she was charged with committing, or that she was unable to prepare an adequate defense because of the indictment. This issue is without merit.

---

[1] We note that the Uniform Rules of Circuit and County Court relating to criminal practice have been supplanted by the Mississippi Rules of Criminal Procedure, effective July 1, 2017. But because the former rules were still in effect during Bryant's trial, Rule 7.06 applies to Bryant's case.

## II.    Plea Deal

¶10.    During the plea hearing, the State represented it sought to enter a nolle prosequi order in exchange for two years' probation, based on the belief that Austin would become a reluctant witness.[2] The trial court refused to accept Bryant's guilty plea. Its exchange with defense counsel is as follows:

THE COURT:    All right. Again, I heard the testimony from the witness stand. And I don't remember exactly, but I know that there's a serious public interest in protecting the security and the integrity of the court system. Your client, per that testimony, violated that in a very dramatic fashion. . . . I will allow you to withdraw your petition. I'll give you to the rest of the morning to confer with the D.A.'s Office . . . to try to resolve the case . . . . I'll extend this until tomorrow so that you can sit down with the D.A's office and see if you can acceptably work it out. But I'm not gonna accept that plea bargaining offer.

[DEFENSE]:    Would the Court entertain a plea from, where she --

THE COURT:    I'm not going to be engaged in plea bargaining --

¶11.    Bryant argues the trial court abused its discretion in refusing her plea because it based its decision on the desire that she receive a higher punishment. Bryant also argues the trial court engaged in judicial overreach by indicating the only acceptable deal was one that included jail time.

¶12.    Under Mississippi law, prosecutors must seek leave of court before an indictment or a count in an indictment may be dismissed. Miss. Code Ann. § 99-15-53 (Rev. 2015) ("A

---

[2] The proposed plea agreement provided that the court would withhold acceptance of Bryant's guilty plea and place her on two years of nonadjudicated probation. If Bryant completed the two years without violating probation, the State then would enter a nolle pros.

district attorney, or other prosecuting attorney, shall not compromise any cause or enter a nolle prosequi either before or after indictment . . . without the consent of the court . . . .”). Rule 8.04(B)(2)(b) of the Uniform Circuit and County Court Rules also provided that any “recommendation [made] to the trial court for a particular sentence . . . will not be binding upon the court.” Thus, “the decision to accept or reject a plea agreement is purely within the trial judge’s discretion.” *Goss v. State*, 730 So. 2d 568, 572 (¶17) (Miss. 1998). However, although the trial judge may exercise his discretion to accept or reject a plea agreement, Rule 8.04(B)(4) specified that “[t]he trial judge shall not participate in any plea discussion.”

¶13. In applying the abuse of discretion standard to the leave of court requirement in section 99-15-53, the Mississippi Supreme Court has held that trial judges need only provide a “reasonable basis” to grant or deny a prosecutor leave to dismiss or nolle pros an indictment. *State v. Adams Cty. Circuit Court*, 735 So. 2d 201, 205 (¶11) (Miss. 1999)*; see also Moody v. State*, 716 So. 2d 592, 594 (¶9) (Miss. 1998) (When reviewing a decision within the trial court’s discretion, if a correct legal standard was applied, we next ask if the trial court’s “decision was one of those several reasonable ones [that] could have been made.”).

¶14. Bryant contends this case is factually similar to *Moody*. In *Moody*, the supreme court found a trial judge abused his discretion in unreasonably rejecting a plea agreement in a murder case where the prosecutor agreed to the plea and declined to pursue the death penalty in exchange for the defendant’s cooperation. *Moody*, 716 So. 2d at 594-95 (¶¶11-14). The supreme court found Moody was entitled to have the plea agreement enforced for two

6

reasons. First, the trial judge abused his discretion when he flatly rejected the plea based on his desire that the defendant not receive less than the death penalty. *Id.* at 594 (¶11). Second, Moody detrimentally relied on the agreement by substantially performing many of the agreement's terms prior to the trial court's refusal. *Id.* Bryant argues the trial judge in her case likewise denied her plea agreement because he sought a higher punishment than the State. However, here, unlike *Moody*, there was no detrimental reliance, and the trial judge based his decision on the public interest in protecting the security and integrity of the court system. We find no error in the refusal of Bryant's plea agreement. The trial court provided a reasonable basis for its decision. Further, we find the trial court did not engage in any plea negotiation. The trial judge did not go beyond providing reasons for rejecting the agreement presented and did not comment on the hypothetical agreements it would or would not accept.

**CONCLUSION**

¶15. Bryant's indictment was legally sufficient. It met all necessary requirements and gave Bryant sufficient knowledge of the crime charged in order to enable her to prepare an adequate defense. The trial court was properly within its discretion to deny Bryant's plea agreement and provided a rational basis for its decision. Further, the trial court did not engage in judicial overreach by participating in any plea discussion. We affirm.

¶16. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, WESTBROOKS AND TINDELL, JJ., CONCUR.**

7