# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01535-COA

**ANTONIO DEMARAO HARRIS A/K/A**                    **APPELLANT**
**ANTONIO HARRIS**

**v.**

**STATE OF MISSISSIPPI**                                             **APPELLEE**

DATE OF JUDGMENT:                  10/01/2018
TRIAL JUDGE:                             HON. LESTER F. WILLIAMSON JR.
COURT FROM WHICH APPEALED:    LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        JAMES A. WILLIAMS
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                       BY: BILLY L. GORE
NATURE OF THE CASE:               CIVIL - POSTCONVICTION RELIEF
DISPOSITION:                      AFFIRMED - 01/07/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., McCARTY AND C. WILSON, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     Antonio Harris filed a petition for postconviction collateral relief (PCR) in the Circuit Court of Lauderdale County. The circuit court dismissed Harris' petition as being time-barred with no applicable exception. We agree and affirm.

## FACTS

¶2.     One day during summer break, Harris and his half-brother drove to the Bonita Lakes Mall, where they broke into a car in broad daylight. The pair ransacked the car, ultimately absconding with four dollars and a Nintendo Game Boy. The car's owner saw them and called the police. Harris and his half-brother were arrested and charged with burglary of an

automobile.

¶3.     Four months later, while out on bond for his burglary charge, Harris began a sexual "relationship" with a twelve-year-old girl (herein referred to by the initials "T.C.").[1] He saw T.C. while visiting his aunt at the Eastern Gardens apartment complex—the same apartments where the child lived.  Harris drove T.C. from the complex to the Salvation Army, where they had sexual intercourse.  Harris maintained that they only had intercourse twice, but T.C. told a judge that it had been seven or eight times. T.C.'s mother discovered the relationship and took her to the hospital for a rape examination; Harris was subsequently arrested.

¶4.     Harris was again released on bond, during which time he was charged with yet another automobile burglary.  This time, he and his cousin went to the Cedar Bend Apartments around 3:45 a.m. and broke into a car.  Witnesses at the apartment complex saw Harris and chased him down the street with stolen speakers in his hands.  Harris admitted he was present during the burglary but denied being the person whom witnesses saw running away with the speakers.

¶5.     Harris entered into a plea agreement for which he would receive a recommendation for the minimum sentence of twenty years to be served day-for-day on the statutory rape charge.  He subsequently withdrew his plea.  He later accepted a new plea offer, which stipulated: the State would recommend concurrent sentences for the statutory rape and auto burglaries, and the State would not object or appeal if the circuit court sentenced Harris to a term below the minimum.  The plea agreement explicitly provided that the State was not

---

[1] The Court of Appeals declines to identify victims of sexual assault.

agreeing to any particular sentence and would not remain silent at sentencing.

¶6.     Harris agreed to the new plea agreement terms, which the circuit court accepted on September 23, 2004.  He was sentenced to twenty years to be served day-for-day for the statutory rape and three years for each of the burglary convictions.  The circuit court set the sentences to be served concurrently in the custody of the Mississippi Department of Corrections.

¶7.     Over thirteen years later, on December 1, 2017, Harris filed his PCR petition. Affidavits of Harris and his mother, Zelda, were included.  Harris insisted in his affidavit that the circuit court "really came down on [him], making it look like [he] was out committing crimes . . . then the 'statutory rape,' which was really having sex with an under-age girl, who was all wanting me."[2]  Without holding an evidentiary hearing, the circuit court signed an order summarily dismissing Harris' motion as being time-barred.

¶8.     Harris now appeals the circuit court's dismissal and argues that his claims were excepted from any procedural bars because his fundamental right to due process was violated.  On appeal, Harris challenges his sentence as not only being violative of his plea deal, but also "fundamentally unfair and [a violation of] his right to due process."  He maintains he was denied due process at sentencing when the State and the circuit court inquired into his juvenile record.

**STANDARD OF REVIEW**

¶9.     This Court reviews the dismissal of a PCR petition for an abuse of discretion.

_____

[2] Even if taken as true, "consent is not and cannot be a defense to a charge of statutory rape." *Phillipson v. State*, 943 So. 2d 670, 672 (¶10) (Miss. 2006).

*Williams v. State*, 110 So. 3d 840, 842 (¶11) (Miss. Ct. App. 2013). We will not reverse a dismissal absent a finding that the lower court's decision was clearly erroneous; however, we review issues of law under a de novo standard. *Salter v. State*, 184 So. 3d 944, 948 (¶10) (Miss. Ct. App. 2015). The issue of whether Harris' petition is procedurally barred is a question of law and is therefore reviewed de novo. *Shields v. State*, 130 So. 3d 160, 162 (¶8) (Miss. Ct. App. 2014).

## DISCUSSION

¶10. Harris challenges the circuit court's dismissal of his PCR petition as being time-barred. He argues that the dismissal was erroneous and that his claims were excepted from the procedural time-bar.

¶11. A petitioner has three years after the entry of the judgment of conviction to file a PCR petition challenging a guilty plea. Miss. Code Ann. § 99-39-5(2) (Rev. 2015). "[O]nce a prisoner's claims are time-barred, they must fall into one of the enumerated exceptions to remain viable." *Salter*, 184 So. 3d at 948 (¶13). "[T]he burden falls on the movant to show he has met a statutory exception." *Campbell v. State*, 233 So. 3d 904, 906 (¶5) (Miss. Ct. App. 2017).

¶12. The enumerated time-bar exceptions are: (1) an intervening decision of the state or federal Supreme Court that "would have actually adversely affected the outcome of his conviction or sentence"; (2) "evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence"; (3) biological evidence

4

demonstrating that the petitioner would likely either not have been convicted or received a lesser sentence; and (4) expiration of sentence or unlawful revocation of probation, parole, or conditional release. § 99-39-5(2).

¶13. Also recognized as an exception to the time-bar is a claim of error affecting a "fundamental constitutional right[.]" *Rowland v. State*, 42 So. 3d 503, 506 (¶9) (Miss. 2010). Our decisions have found at least five fundamental rights to survive the procedural bar: (1) the right against double jeopardy; (2) the right to be free from an illegal sentence; (3) the right to due process at sentencing; (4) the right not to be subject to ex post facto laws; and (5) certain cases of ineffective assistance of counsel. *Id*. at 506-08 (¶¶10, 14); *James v. State*, 266 So. 3d 1029, 1031 (¶5) (Miss. Ct. App. 2018).

¶14. "Where a petitioner asserts a fundamental right, the courts must address the merits of the PCR petition regardless of procedural bars." *Salter*, 184 So. 3d at 950 (¶21). "However, mere assertions of constitutional-rights violations do not suffice to overcome the procedural bar." *Funchess v. State*, 283 So. 3d 214, 216 (¶5) (Miss. Ct. App. 2019) (internal quotation mark omitted). The petitioner bears the burden of "alleg[ing] in his motion such facts as are necessary to demonstrate that his claims are not procedurally barred . . . ." Miss. Code Ann. § 99-39-21(6) (Rev. 2015).

¶15. Harris' motion was filed in 2017—more than thirteen years after the judgment of conviction was entered. As a matter of law, it is time-barred. Harris attempts to circumvent the statute's enumerated exceptions by asserting errors affecting his fundamental rights. Specifically, he alleges that the circuit court erred in (1) denying him an evidentiary hearing,

(2) sentencing him to the statutory minimum, and (3) permitting evidence of his juvenile record during sentencing. Of these claims, only one asserts an error affecting a fundamental right—freedom from an illegal sentence.

### I. The circuit court was not required to grant Harris an evidentiary hearing.

¶16. Harris argues that he was denied due process of law and fundamental fairness when the circuit court dismissed his post-conviction petition without holding an evidentiary hearing. However, "the right to an evidentiary hearing is not guaranteed. A trial court enjoys wide discretion in determining whether to grant an evidentiary hearing." *Pinkney v. State*, 192 So. 3d 337, 341 (¶12) (Miss. Ct. App. 2015) (citation and internal quotation marks omitted). "Mississippi law authorizes a trial judge to summarily dismiss a motion for post-conviction relief without the benefit of an evidentiary hearing 'if it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief.'" *Buckhalter v. State*, 912 So. 2d 159, 160 (¶6) (Miss. Ct. App. 2005) (quoting Miss. Code Ann. § 99-39-11(2) (Rev. 2000)).

¶17. Harris' motion failed to show that he was entitled to any relief. The circuit court's dismissal of his petition is consistent with the evidence and testimony presented in the record. This issue is without merit.

### II. The minimum sentence of twenty years did not violate Harris' fundamental rights.

¶18. Harris submits that "his sentence was fundamentally unfair and violated his right to due process." Harris entered a blind plea of guilt to one count of statutory rape and two

6

counts of burglary of an automobile. Statutory rape carries a sentence of "imprisonment for life in the State Penitentiary or such lesser term of imprisonment as the court may determine, but not less than twenty (20) years." Miss. Code Ann. § 97-3-65(3)(c) (Rev. 2000). Burglary of an automobile carries a penalty of up to seven years' imprisonment. Miss. Code Ann. § 97-17-33(1) (Rev. 2000). Harris was given the minimum sentence of twenty years for the statutory rape and three years for each of the burglary convictions, with all sentences set to run concurrently.

### A. *The terms of the plea agreement were not violated.*

¶19. Harris alleges that the terms of his plea agreement were violated. He argues that the circuit court violated the plea agreement by giving him the minimum sentence for the statutory rape charge and that the State "broke its implicit promise not to argue for the maximum." In his PCR petition, Harris goes so far as to say "the defense counsel, trial judge and the Assistant District Attorney, all had informed Antonio he would not get the statutory minimum of 20 years . . . ." The record expressly refutes this assertion.

¶20. Harris entered into a blind plea agreement. The only promises made to him were that the State would recommend his sentences be served concurrently and that it would not object or appeal *if* the court sentenced him to less than the statutory minimum. Importantly, the plea petition explicitly stated that the State was not agreeing to a specific sentence nor to remain mute at sentencing.

¶21. Harris complains that the State "argued for at least the minimum of 20 on the statutory rape." An argument for the minimum term is a far cry from arguing for the maximum. Even

7

if the State had argued for the maximum available sentence, it made no such promise not to do so. In fact, the agreement expressly stated the opposite—that the State would not remain mute at sentencing.

¶22. Harris also contends that the circuit court violated the plea agreement. First, as a matter of law, "the decision to accept or reject a plea agreement is purely within the trial judge's discretion." *Goss v. State*, 730 So. 2d 568, 572 (¶17) (Miss. 1998). Further, the rules in place at the time of the plea set out that any "recommendation [made] to the trial court for a particular sentence . . . will not be binding upon the court." URCCC 8.04(B)(2)(b); *see Bryant v. State*, 238 So. 3d 1213, 1217 (¶12) (Miss. Ct. App. 2018). Harris cannot complain that the circuit court did not accept a plea deal it was not bound by.

¶23. Second, Harris fails to acknowledge that the circuit court was not part of the agreement worked out between himself and the State. In order to violate a deal, one must be a part of the deal, and "where the prosecutor has done nothing more than promise to recommend that the trial court grant the accused a certain concession, pursuant to the plea agreement, and if the judge informed the accused that he is not bound to accept the state's recommendation, it is not error if the trial court does not follow the prosecutor's sentencing recommendation." *Martin v. State*, 635 So. 2d 1352, 1354-55 (Miss. 1994). The plea deal was between Harris and the State—*not* Harris and the court. The circuit court was not bound by the plea agreement.

¶24. Furthermore, Harris strains for us to find the circuit court in error for refusing to give an illegally lenient sentence. The Legislature has set the minimum sentence for this crime.

Under the facts of this case, the circuit court was not bound by the terms of the plea deal, and we will not find error on this point. *Cf. Chambliss v. Sate*, 188 So. 3d 1262, 1266 (¶17) (Miss. Ct. App. 2016) (When a sentence is "more lenient than authorized by statute," a defendant cannot argue error.).

¶25. Harris' sentence is consistent with the plea offer from the State and with the order accepting the plea, which Harris signed.

#### B. *Harris' plea was knowingly, intelligently, and voluntarily made.*

¶26. Harris argues that he was misled regarding the terms of his plea agreement. He argues that he was not informed that the court would set his sentence to be served day-for-day. Additionally, Harris claims that he agreed to plead guilty based on his counsel's advice that he would only serve part of his sentence. In his affidavit, Harris states his attorney told him that if he pleaded guilty to the statutory rape charge, he would be sentenced to no more than five years and serve no more than two and a half years.

¶27. Prior to accepting his plea, the circuit court placed Harris under oath and questioned him to ascertain the voluntariness of his plea and the consequences thereof. In response to the court's questions, Harris indicated that he understood the consequences and that his plea was voluntary. Thereafter, the court took additional time to complete a final review of the plea agreement with Harris and answer any and all questions he had. The circuit court found beyond a reasonable doubt that Harris understood the nature and consequences of his plea, including the maximum and minimum sentences required by law.

¶28. "Great weight is given to statements made under oath and in open court, and though

9

a plea petition is not an oral statement, it is a sworn document presumptively prepared with an appreciation of its fateful consequences." *Thomas v. State*, 169 So. 3d 978, 981 (¶8) (Miss. Ct. App. 2015) (internal quotation mark omitted).

¶29.    Even if Harris' version of events is accurate, he had the option to stop the plea hearing.  Harris did not take such action.  Harris told the circuit court he understood the charges and sentences available, and he pleaded guilty with full knowledge.

¶30.    Harris, while represented by counsel, signed his guilty-plea petition, and he verbally acknowledged to the circuit court that he had understood the petition when he signed it. Therefore, we hold that Harris' guilty plea was knowingly, intelligently, and voluntarily made, and this issue is without merit.

C.    *The circuit court acted within its authority in sentencing Harris.*

¶31.    After arguing that the State "broke its implicit promise not to argue for the maximum," Harris goes on to argue that the State "forced" the circuit court to give him the minimum sentence.  He alleges that the State took away the option for the court to sentence him to below the minimum/post-release supervision.  Contrary to this assertion, "[s]entencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." *Carson v. State*, 161 So. 3d 153, 156 (¶7) (Miss. Ct. App. 2014).  "As a general rule, a sentence that does not exceed the maximum period allowed by statute will not be disturbed on appeal." *Id*. at 156-57 (¶7).

¶32.    The circuit court was required by statute to sentence Harris to no less than the minimum sentence.  The court went so far as to say that it wanted to give Harris "the least

10

sentence the law permits . . . and that is a 20-year sentence to serve . . . . The probation statute dealing with primarily first offenders prohibits even consideration of probation for a person that has been convicted of a crime that carries up to a life imprisonment sentence. And your crime of statutory rape fits that category, it carries up to life."

¶33. Because Harris was given the minimum term, his sentence is presumptively valid and not violative of a fundamental, constitutional right. As such, this issue lacks merit.

### III. The circuit court did not err when it allowed evidence of Harris' Youth Court record during sentencing.

¶34. Harris continues to argue that he was denied due process at sentencing when the State and the circuit court inquired into his juvenile record. During the sentencing hearing, defense counsel called Harris' mother, Zelda Harris, to testify to her son's good nature and lack of disciplinary problems. She stated that Harris had "never been in trouble with the law" except for the charges then before the court. On cross-examination, Zelda continued her emphatic denial of Harris' criminal history. The State then asked Zelda about specific crimes Harris had been charged with as a juvenile.

¶35. Zelda's direct-examination testimony that Harris had "never been in trouble with the law" opened the door for the State to inquire into Harris' juvenile record. She then acknowledged he had a history of disturbing the peace and using profane language.[3]

¶36. Our Supreme Court previously addressed this issue in *Jordan v. State*, 728 So. 2d

---

[3] In her sworn affidavit attached to Harris' PCR petition, Zelda admits to lying on the stand regarding her knowledge of Harris' Youth Court record and the auto burglary. Zelda testified this time that she had lied because she "didn't want to make things look bad by admitting what she surely knew about juvenile court, because that will damage the opportunity for [a] one year [sentence]."

11

1088 (Miss. 1998). In *Jordan*, the defendant's mother testified during the sentencing phase of the trial that her son had never been in trouble with the law. *Id*. at 1097-98 (¶42). After she testified that her son had never been in trouble with the law, she was cross-examined about prior crimes her son had been charged with in Youth Court. *Id*. On appeal, the defendant challenged the court's allowance of an inquiry into prior Youth Court matters. *Id*. at 1098 (¶43). The Supreme Court held that inquiries "into prior juvenile records on cross-examination when introduced to rebut the opinion testimony of the mother of the accused" are permissible. *Id*. The Court found "the questions asked were proper to test the recollection of the witness and were in rebuttal." *Id.*[4]

¶37.　Here, the State did not inquire into Harris' juvenile record in order to prove that on the occasion in question he acted in conformity with past behavior. Harris' guilt had already been decided when he pleaded guilty. Rather, the inquiries were made in order to impeach Zelda's credibility. Defense counsel opened the door during direct examination.

¶38.　Lastly, Harris' counsel failed to object to the questioning of Zelda. "Where a party fails to preserve his objection for appeal, he can assert the error on appeal only by arguing that there was plain error." *Waldon v. State*, 749 So. 2d 262, 267 (¶14) (Miss. Ct. App. 1999). "A party is protected by the plain error rule when (1) he has failed to perfect his appeal and (2) when a substantial right is affected." *Id*. Harris' failure to object at trial

---

[4] *See* Miss. Code Ann. § 43-21-261(10) (Rev. 2004) ("The judges of the circuit and county courts, and presentence investigators for the circuit courts . . . shall have the right to inspect any youth court records of a person convicted of a crime for sentencing purposes only."); *Reeder v. State*, 783 So. 2d 711, 717 (¶¶21-22) (Miss. 2001) (The confidentiality of the youth court act is not violated by a trial court inquiring into a defendant's youth court record during sentencing.).

satisfies this first requirement. For the reasons already stated, we find that allowing testimony of Harris' juvenile record did not deprive him of any fundamental right. Therefore, Harris fails to establish plain error.

¶39. For the reasons discussed above, we find this issue to be without merit.

## CONCLUSION

¶40. We find that Harris' PCR petition was time-barred because it was filed outside of the mandatory three-year statute-of-limitations period imposed by section 99-39-5(2). Finding that no statutory exceptions apply and that the bar is not surmounted by the violation of a fundamental constitutional right, we conclude that Harris' motion was time-barred.

¶41. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.**

13