# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00306-COA

**KELTON K. HATHORNE, SR. A/K/A KELTON K. HATHORNE**
<span style="float:right">**APPELLANT**</span>

**v.**

**STATE OF MISSISSIPPI**
<span style="float:right">**APPELLEE**</span>

| | |
|---|---|
| DATE OF JUDGMENT: | 03/12/2021 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SANFORD E. KNOTT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 01/17/2023 |
| MOTION FOR REHEARING FILED: | |

### BEFORE WILSON, P.J., GREENLEE AND EMFINGER, JJ.

### GREENLEE, J., FOR THE COURT:

¶1. Kelton Hathorne appeals from the order of the Forrest County Circuit Court denying his motion for post-conviction collateral relief (PCR). Hathorne argues that his indictment was defective for failing to charge a crime. We find that Hathorne's indictment was defective. However, we find that his claim is procedurally barred under the Uniform Post-Conviction Collateral Relief Act (UPCCRA), specifically Mississippi Code Annotated section 99-39-21 (Rev. 2020). Accordingly, we affirm the circuit court's order.

## FACTS AND PROCEDURAL HISTORY

¶2. In November 2015, Kelton Hathorne was arrested by Hattiesburg Police Officers Jason Jarvis and Brad Nix after attempting to flee a routine traffic stop. Hathorne was

handcuffed, patted down, and placed in the back of Officer Nix's patrol car. After they returned to the station, Officer Nix searched his patrol car and found a cloth bag containing a crystallized substance. A field test initially indicated that the substance was "methamphetamine." The substance was tested further by drug analysts, who determined it was a designer drug known as "ethylone." Police also determined that this substance belonged to Hathorne and he was charged with possession of a controlled substance under Mississippi Code Annotated section 41-29-139 (Supp. 2014).

¶3. A Grand Jury indicted Hathorne in December 2016 for possession of ethylone. The indictment charged Hathorne as follows:

> . . . that . . . Kelton K. Hathorne, Sr. . . . did knowingly, willfully, unlawfully, and feloniously possess thirty (30) grams or more of Ethylone, a Schedule 1 Controlled Substance, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

¶4. A trial took place in May 2017. At trial, Grady Downey, a forensic scientist and drug analyst, testified to the identification of the substance. He stated:

> Ethylone is a substituted designer drug. On the streets, it's sometimes known as bath salts. It's a psychotropic drug in the class of amphetamines and cathinones. . . . [A]nother name for ethylone is methylenedioxyethylamphaetamine [sic] . . . . That particular drug has been substituted in different areas of the, say, backbone molecule. It has a backbone of a cathinone variety. A cathinone is a naturally occurring compound which is derived from the khat plant. . . . It is a psychotropic stimulant drug.

Ultimately, the jury found Hathorne guilty of possession of a controlled substance. He was sentenced to thirty years with ten suspended and twenty to serve.

¶5. Hathorne timely appealed the verdict in June 2017. This Court affirmed Hathorne's

2

conviction in October 2018.[1]  The Mississippi Supreme Court denied certiorari.  Then,

following this Court's decision in *Payne v. State*, 282 So. 3d 432 (Miss. Ct. App. 2019),

Hathorne filed an application for leave to file a motion for post-conviction relief, arguing that

his indictment did not charge a crime.  The Mississippi Supreme Court granted his

application and Hathorne filed his motion for post-conviction relief.  A hearing was set for

February 2021.  In March 2021 the circuit court denied Hathorne relief and Hathorne now

appeals.

## STANDARD OF REVIEW

¶6.    "When reviewing a trial court's denial or dismissal of a PCR motion, we will only

disturb the trial court's factual findings if they are clearly erroneous; however, we review the

trial court's legal conclusions under a de novo standard of review." *Jenkins v. State*, 283 So.

3d 217, 219 (¶5) (Miss. Ct. App. 2019) (quoting *Bass v. State*, 237 So. 3d 172, 173 (¶4)

(Miss. Ct. App. 2017)).  "Whether an indictment is fatally defective is a question of law that

we review de novo." *Id.* (quoting *Bryant v. State*, 238 So. 3d 1213, 1216 (¶7) (Miss. Ct.

App. 2018)).

## DISCUSSION

### (1)    The indictment was defective.

¶7.    In his PCR motion, Hathorne claimed that his indictment failed to charge a crime

because ethylone is not listed as a Schedule I substance under Mississippi Code Annotated

---

[1] In that appeal, Hathorne argued that the indictment was defective because it did not charge him with drug trafficking, only simple possession, while also challenging the sufficiency and weight of the evidence. *Hathorne v. State*, 267 So. 3d 798, 800-02 (¶¶6-11) (Miss. Ct. App. 2018).

section 41-29-113 (Supp. 2014), and the State did not sufficiently connect the drug in question to the ones listed in the statute.

¶8.    "Every material fact and essential ingredient of the offense—every essential element of the offense—must be alleged with precision and certainty, or, as has been stated, every fact which is an element in a prima facie case of guilt must be stated in the indictment." *Copeland v. State*, 423 So. 2d 1333, 1336 (Miss. 1982). "An indictment which fails to allege all essential elements of a crime runs afoul of our constitutions and is void." *Thomas v. State*, 126 So. 3d 877, 879 (¶7) (Miss. 2013).

¶9.    Hathorne was indicted for being in possession of the substance ethylone. At first glance, it is clear that "ethylone" does not appear in the list of Schedule I substances under the statute. However, the exact name of the substance does not necessarily need to be provided. Our caselaw provides other avenues for indictments to be sufficient. *See Qasoon v. State*, 232 So. 3d 831, 834-35 (¶¶10-11) (Miss. Ct. App. 2017) ("An indictment that uses a code or trade name for a controlled substance rather than a chemical description does not fail to allege an essential element[.]"). Yet this Court held in *Payne* that it is insufficient for an indictment to allege an unlisted pseudonym for a controlled substance and leave the jury to "connect the dots." *Payne*, 282 So. 3d at 437 (¶18).[2]

¶10.    The facts in *Payne* and this present case are nearly identical. In February 2015, Payne was stopped by police, and during the course of their search, the police found a "milky, rock-like substance." *Id.* at 434-35 (¶¶3-6). Payne was arrested and subsequently indicted for

---

[2] *Payne* involved a direct appeal from a conviction. *Payne*, 282 So. 3d at 436 (¶¶11-12).

4

possession of ethylone, a Schedule 1 controlled substance. *Id.* at 435 (¶7). At trial, the drug analyst testified: (1) that the substance was ethylone; (2) that it weighed 0.16 grams; and (3) that ethylone was a Schedule I controlled substance that had "many names" including "methylenedioxymethcathinone" or "beta keto MDEA." *Id.* at (¶10). The drug analyst did not provide any other names or connect ethylone to MDMA (the drug Payne believed he possessed) or any other Schedule I controlled substance. *Id.* at 436(¶10). Nevertheless, Payne was convicted for possession of a controlled substance and appealed the verdict. *Id.* at (¶¶11-12).

¶11. On appeal, Payne argued that the indictment failed to charge a crime because ethylone was not listed in Schedule I of the Controlled Substances Act and was thus void. *Id.* at (¶14). Payne relied on *Brewer v. State*, 351 So. 2d 535 (Miss. 1977), and *Copeland v. State*, 423 So. 2d 1333 (Miss. 1982), to support his argument. In *Brewer*, the defendant was convicted of a controlled substance which was named "preludin" in the indictment. *Brewer*, 351 So. 2d at 536. Preludin was not a listed controlled substance, but it did contain phenmetrazine which was listed in Schedule I. *Id.* However, the supreme court held that the State failed to prove that connection, and subsequently reversed the trial court based on a failure to charge a crime. *Id.* at 537.

¶12. Likewise, in *Copeland*, the defendant was indicted for possessing "methylenedioxy amphetamine." *Copeland*, 423 So. 2d at 1336. The indictment had mistakenly left off the "3, 4" (read in whole, "3, 4 methylenedioxy amphetamine"), which actually was a different drug and an enumerated controlled substance, while "methylenedioxy amphetamine" (the one

named in the indictment) was not listed in Schedule I. *Id.* The State argued that this error was one of form, and thus procedurally barred, but the supreme court—citing the very factually similar case *United States v. Huff*, 512 F.2d 66 (5th Cir. 1975)—held that the two substances were materially different, that the defect was one of substance, and that the charge was defective and void. *Copeland*, 423 So. 2d at 1336-37.

¶13. Following the reasoning in *Brewer* and *Copeland*, this Court in *Payne* found that Payne's indictment failed to allege possession of an enumerated Schedule I substance and reversed and rendered that count of the indictment. *Payne*, 282 So. 3d at 438 (¶20). This Court specifically noted that the drug analyst's testimony failed to connect the dots to the jury; she testified that it was a controlled substance but never explained how it matched or possessed any of the substances in the statute. *Id.* at 437 (¶¶18-19).

¶14. Hathorne is making the same argument as the appellant in *Payne*, claiming his facts are consistent with Payne's. The State disagrees, claiming that the drug analyst's testimony sufficiently connected the dots for the jury. Furthermore, the State points to the circuit court's reliance on *Qasoon* in the order and argues that *Qasoon* is controlling.

¶15. The drug analyst's testimony regarding the identification of ethylone in this case certainly had more substance than the drug analyst's testimony in *Payne*, but it still failed to connect the dots. The drug analyst, Downey, used several different names for the substance: "ethylone," "bath salts," and "methylenedioxyethylamphetamine" [sic].[3] He called it a

---

[3] There is some confusion as to exactly what drug Downey referenced when he testified (or perhaps its spelling). This drug, as written in the transcript, does not exist. However, at other points in the record, the parties refer to Downey's testimony with the spelling "methylenedioxymethamphetamine," which seems to be the correct spelling, though

6

"substituted designer drug," a "psychotropic drug in the class of amphetamines and cathinones," and a "psychotropic stimulant drug." He explained that it is in the same class as amphetamines but also had molecular differences of a cathinone variety. Yet at no point did he tie any of this directly into the statute. Ethylone, bath salts, and methylenedioxymethamphetamine are not explicitly listed as Schedule I substances.

¶16. Furthermore, Downey pointed out that ethylone was a stimulant but also in the class of amphetamines and cathinones. In the relevant statute at the time stimulants had their own category of which Cathinone was named as a specific substance. Miss. Code Ann. § 41-29-113(e)(3) (Supp. 2014). On the other hand, amphetamines had no distinct listing but seemed to be more associated with the Hallucinogenic substances section. *Id.* § 41-29-113(c) (Supp. 2014). Nonetheless, neither Downey nor any other witness stated that ethylone contained any Cathinone or amphetamine. This lack of clarity coupled with no direct connection to any named substance fails to connect the dots for the jury.

¶17. Both the State in its brief and the circuit court in its order relied on the reasoning of *Qasoon*. Qasoon was indicted for selling 7.9 grams of "AB-FUBINACA, a Schedule I controlled substance . . . ." *Qasoon*, 232 So. 3d at 834 (¶8). He was convicted of this count and challenged the sufficiency of the indictment on appeal. *Id.* at 833 (¶1). Qasoon argued that the indictment was defective because it did not contain the description of the drug used in the statute and did not contain the phrase "or a related isomer" after AB-FUBINACA. *Id.*

---

it is still not an enumerated Schedule I substance. We cannot determine whether Downey's testimony was a typographical error by the court reporter, or whether the transcript accurately transcribed his testimony.

at 834-35 (¶10).

¶18.   This Court held that an indictment that uses a code or trade name rather than the actual chemical description does not fail to allege an essential element. *Id.* at 835 (¶11). As evidence to this, we found that AB-FUBINACA was a code name for a specific synthetic cannabinoid that was loosely derived from its chemical formula, that the name appeared to be in widespread use, and that the drug was temporarily placed into the federal-controlled-substances Schedule I by the same name in 2014. *Id.* In addition, we noted that the indictment cited the Code subsection, although the specific subsection did not exist due to a scrivener's error. *Id.* at (¶13). Furthermore, there was evidence to suggest that the defense knew exactly which substance the indictment was referring to. *Id.* at (¶12).

¶19.   We find that *Qasoon* is distinguishable from the current case. Hathorne, like Payne before him, was indicted for possessing ethylone. At no point was a specific Code subsection ever pointed out to the jury. The State provided no evidence that ethylone was a recognized trade name or that its pseudonym was in widespread use. There was no evidence that ethylone was on any federal schedule. Therefore, we find our present case is distinguishable from *Qasoon* and that *Payne* is the more factually similar case.

¶20.   At the PCR hearing, the State provided an affidavit by drug analyst Keith McMahan that attempted to connect ethylone to the statute. McMahan's affidavit was a better description of the drug than Downey's testimony, and had it been presented at trial, Hathorne's argument would be far less compelling. However, because this affidavit was not presented at trial, it cannot be used *post hoc* as evidence that the State met its burden. The

8

State cannot be allowed to retry this case at the PCR hearing. They needed to show that the **evidence at trial** was sufficient to connect the dots for the jury. Therefore we decline to use this affidavit in our review.

¶21.    For the State to indict people for possessing "ethylone" it needs to be able to tie the drug to a listed Schedule I substance through testimony that connects the dots for the jury. Downey's testimony at trial may have been more substantial than the drug analyst's testimony in *Payne*, but we do not find that it was sufficient enough to connect the dots in this case.

### (2)    Hathorne's claim is barred by the UPCCRA.

¶22.    While Hathorne's case is very similar to the *Payne* case, there is one important distinction: Payne made his arguments on direct appeal, while Hathorne failed to bring this claim until after his direct appeal. *See Payne*, 282 So. 3d at 434 (¶1). PCR motions are subject to the limitations of the UPCCRA, including Mississippi Code Annotated section 99-39-21, which provides in relevant part:

> (1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.
>
> . . . .
>
> (4) the term "cause" as used in this section shall be defined and limited to those cases where the legal foundation upon which the claim for relief is based could not have been discovered with reasonable diligence at the time of trial or direct appeal.

9

Miss. Code Ann. § 99-39-21(1), (4) (Rev. 2020). Hathorne's challenge to his indictment is barred because his claim was "capable of determination at trial and/or on direct appeal." In fact, Hathorne had already attacked his indictment under a different legal theory and was denied. *Hathorne*, 267 So. 3d at 800-01 (¶6). Furthermore, Hathorne does not have the requisite "cause" that is necessary to receive relief from this waiver. While it is true that *Payne* was not published until after Hathorne's direct appeal, the basis in *Payne*—the *Brewer* and *Copeland* cases—could "have been discovered with reasonable diligence at the time of trial or direct appeal."

¶23.    Under our current law, there are exceptions to the procedural bars of the UPCCRA. The supreme court in *Rowland v. State* (*Rowland I*), 42 So. 3d 503 (Miss. 2010), held that "errors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA." *Rowland I*, 42 So. 3d at 507 (¶12). *Rowland* specifically held that double jeopardy and illegal sentencing were two of those fundamental rights. *Id.*; *see also Ivy v. State*, 731 So. 2d 601, 603 (¶14) (Miss. 1999); *Kennedy v. State*, 732 So. 2d 184, 186-87 (¶8) (Miss. 1999). On appeal after remand, the supreme court in *Rowland v. State* (*Rowland II*), 98 So. 3d 1032 (Miss. 2012), also recognized that certain denials of due process constituted an exception to the UPCCRA. *Id.* at 1036 (¶6) (citing *Smith v. State*, 477 So. 2d 191, 195 (Miss. 1985)), *overruled on other grounds by Carson v. State*, 212 So. 3d 22, 33 (¶39) (Miss. 2016). *Rowland II* overruled many cases that upheld such procedural bars of the UPCCRA.[4]

---

[4] As of the writing of this opinion, the supreme court currently is considering a case that may affect some aspects of *Rowland II*. *See* Order, *Howell v. State*, No. 2020-CA-00868-SCT, at 1 (Miss. March 31, 2022) (requiring supplemental briefing on whether the supreme court should overturn *Rowland II* and any other case that applies the

¶24. However, the issue of defective indictments is not included in those fundamental rights exceptions. *Forkner v. State*, 277 So. 3d 946, 948 (¶7) (Miss. 2019). In *Forkner*, the defendant was convicted of burglary of a storehouse, and this Court affirmed the conviction on appeal. *Id.* at 947 (¶2). On his fourth PCR motion, Forkner "argued that his conviction and sentence were void and illegal because the indictment had not charged all of the essential elements of the crime of burglary of a storehouse." *Id.* at (¶4). After "a panel of [the supreme] [c]ourt granted Forkner's petition and found that Forkner's indictment was defective," the en banc supreme court granted rehearing, vacated the panel order, and held that Forkner's motion was barred by section 99-39-21, as well as the UPCCRA's statute of limitations and successive-motions bar. *Id*. at 947-48 (¶¶4-8). The en banc supreme court specifically noted that Forkner's claim regarding his indictment was barred because it could have been raised "at trial or on appeal," and Forkner could not "show cause and actual prejudice in order to overcome his waiver of the issue." *Id*. at 948 (¶7).

¶25. We note that by granting Hathorne's application for leave to file a PCR motion, the supreme court has allowed us to examine the alleged failure to charge a cognizable crime in this case, despite the fact that the UPCCRA under section 99-39-27 states that a court should not grant a motion "[u]nless it appears from the face of the application, motion, exhibits and the prior record that the claims presented by those document *are not barred under Section 99-39-21 . . . .*" Miss. Code Ann. § 99-39-27(5) (Rev. 2020) (emphasis added). In light of *Forkner*, and finding no binding precedent to the contrary, we find that Hathorne's claim of

fundamental rights exception to the three-year statute of limitations in the UPCCRA).

11

a defective indictment is procedurally barred under section 99-39-21 of the UPCCRA.[5]

## CONCLUSION

¶26.     Consistent with our decision in *Payne* and the supreme court's decisions in *Brewer* and *Copeland*, we find that Hathorne's indictment was defective.  However, Hathorne failed to address this argument at trial or on direct appeal, instead making the argument for the first time in a PCR motion.  Because *Brewer* and *Copeland* were accessible to Hathorne, his argument "[was] readily capable of determination at trial and/or on direct appeal . . . ." Miss. Code Ann. § 99-39-21(1).  Furthermore, he cannot show "cause" under the statute because the basis of his legal argument could "have been discovered with reasonable diligence at the time of trial or direct appeal." *Id.* § 99-39-21(4).  Finally, the claim of a defective indictment does not fall under one of the fundamental constitutional rights exceptions to the UPCCRA's procedural bar.  *Forkner*, 277 So. 3d at 948 (¶7).  Accordingly, we affirm the order of the circuit court denying Hathorne post-conviction relief.

¶27.   **AFFIRMED.**

**BARNES, C.J., CONCURS.  WILSON, P.J., AND EMFINGER, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE AND SMITH, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.  McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J., WESTBROOKS AND McDONALD, JJ.**

---

[5] The supreme court's order in *Hathorne*, No. 2020-M-00451, is an unpublished, non-precedential order.  We note *Forkner* is published and binding precedent.  To the extent there may be a conflict between the two, this Court should follow the published precedent. *See Westbrook v. City of Jackson*, 665 So. 2d 833, 837 n.2 (Miss. 1995) (stating that the court's unpublished decisions are not precedent).

**McCARTY, J., DISSENTING:**

¶28. In those exceedingly rare cases where we determine that an indictment is not only defective, but *does not charge a crime*, we must vacate the conviction and order the incarcerated person to be freed. Our obligation to our Constitution and the citizenry of Mississippi requires no less.

¶29. Precedent from our Supreme Court could not be more clear. "[A] challenge to an indictment for failure to charge the essential elements of a criminal offense affects a fundamental right, *and may not be waived*." *Carson v. State*, 212 So. 3d 22, 31 (¶33) (Miss. 2016) (emphasis added). The lead opinion has concluded that the indictment of Kelton Hathorne did not charge him with a crime. As it points out, there was no way "to connect the dots" between the crime charged and the actual proof mustered at trial that Hathorne possessed a controlled substance. All that was proved at trial was that he had *something*—not a prohibited substance as defined by the Legislature.

¶30. Despite *Carson*'s crystal clear proclamation that attacking "a challenge to an indictment for failure to charge the essential elements of a criminal offense affects a fundamental right, and may not be waived," the lead opinion concludes it somehow cannot be brought in this case. This ignores binding precedent from our Supreme Court and ignores the great well of justice available to our Judiciary when we recognize that a man has been imprisoned for no crime at all.

¶31. The UPCCRA is a narrow path meant "to provide prisoners with a procedure, limited in nature, to review those objections, defenses, claims, questions, issues or errors which in

practical reality could not be or should not have been raised at trial or on direct appeal."

Miss. Code Ann. § 99-39-3 (Rev. 2020); *see Alexander v. State*, 335 So. 3d 577, 582 (¶13) (Miss. Ct. App. 2021) (pointing out that the PCR law absorbed prior habeas corpus practice). As a defined path, it has boundaries; a petitioner must seek relief within 3 years with only limited ways to extend it. *See* Miss. Code Ann. § 99-39-5(2) (Rev. 2020).

¶32. In cases where a petitioner has alleged his indictment was defective, the Supreme Court has required the person to bring such a challenge within this statute of limitations. *Forkner v. State*, 277 So. 3d 946, 949 (¶6) (Miss. 2019). The lead opinion relies on *Forkner* to hold that Hathorne arrives at the courthouse too late. But the petitioner in that case was only protesting about details—in fact, he was complaining about the lack of details regarding what he allegedly stole. *Id*. at 950 (¶12). The Supreme Court concluded that there was nothing that would have stopped him from arguing his grievance within 3 years, and "that Forkner's indictment was not defective; instead, it fully notified him of the nature and cause of the accusation against him and did not prejudice him in his defense." *Id*. at 949 (¶11).

¶33. This case is then unlike *Forkner* in two keys ways. First, unlike that case, the lead opinion concludes that Hathorne's indictment *does not charge a crime*. This means it's not a *Forkner* situation, but a *Carson* one—where the indictment doesn't charge the essential elements of a crime. Second, it is no mere lack of description that Hathorne argues; it is that the offense of which he was charged is not prohibited by law. As a result, *Forkner* does not apply and does not pre-empt relief in this extreme situation.

¶34. As the lead opinion correctly points out, "there are exceptions to the procedural bars

14

of the UPCCRA." Any "errors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA." *Rowland*, 42 So. 3d at 507 (¶12). The Court in *Carson* ruled that "a challenge to an indictment for failure to charge the essential elements of a criminal offense affects a fundamental right, *and may not be waived*." *Carson*, 212 So. 3d at 31 (¶33) (emphasis added). As Hathorne has alleged he has a fundamental right to be free from conviction when his indictment did not charge him with the essential elements of a crime, his challenge is simply not time barred by the UPCCRA. *See also Creel v. State*, 305 So. 3d 417, 421 (¶9) (Miss. Ct. App. 2020) (holding that "the right to be free from an illegal sentence" likewise survives the procedural bar).

¶35.    We cannot forget that Mississippians are imbued with certain sacred rights. Among them are the mandate that the courthouse doors will remain forever open, "and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay." Miss. Const. art. 3, § 24.

¶36.    Our Constitution also prohibits "cruel or unusual punishment" and "excessive fines." Miss. Const. art. 3, § 28. Kelton Hathorne is the *only person in the State of Mississippi* who is under punishment for possessing the substance he had that day in Hattiesburg. To maintain his conviction then bursts through this constitutional protection.

¶37.    The trial court sentenced Kelton Hathorne to a total of thirty years with twenty to serve. Yet we know that he did not commit a crime. In upholding a conviction for a law that does not exist, we also have defined a new crime in Mississippi. Perhaps the Legislature did

15

not see fit to declare ethylone a controlled substance, but this Court has. There is one man who will serve decades of time for its possession, despite that it has not been declared illegal by our Legislature. In upholding this sentence, we risk creating a new crime ex post facto, in doing so overrunning the constitutional boundaries of the Judiciary. *See Russell v. State*, 346 So. 3d 435, 441 (¶30) (Miss. 2022) ("the decision as to what constitutes a crime and what punishment is to be received for those crimes is, subject to constitutional limitations, solely within the realm of the legislature"); Miss. Const. art. 3, § 16 (prohibiting ex post facto laws).

¶38. This is not a hard case. We have made it hard. For it is not hard to see that when a citizen is convicted of a crime, and we learn it is not actually a crime, he must not stay imprisoned. This does not take precedent or review of statutes to figure. It is just doing what is right. Accordingly, I must with all respect to my colleagues register this dissent.

**CARLTON, P.J., WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**

16